PEOPLE v DUNCAN

Docket No. 112997. Decided May 23, 2000. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed in part the judgments of the Court of Appeals and the circuit court with respect to the defendant's felony-firearm convictions and denied leave to appeal his convictions of first-degree murder.

Timothy L. Duncan was convicted by a jury in the Muskegon Circuit Court of two counts of first-degree murder and two counts of possession of a firearm during the commission of a felony. The court, R. Max Daniels, J., instructed the jurors regarding the elements of first- and second-degree murder, and voluntary manslaughter, but entirely omitted any instruction regarding the elements of felony-firearm. Defense counsel did not object. The Court of Appeals, MARKEY, P.J., and GRIFFIN and WHITBECK, JJ., found the omission of felony-firearm instructions to be error, but nevertheless affirmed the felony-firearm convictions in an unpublished opinion per curiam on the ground that the error was harmless (Docket No. 200766). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Justices CAVANAGH, KELLY, TAYLOR, YOUNG, and MARKMAN, the Supreme Court *held*:

A conviction by a jury must be set aside where the court omitted instructions on all the elements of an offense. It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt. Thus, the defendant's felony-firearm convictions must be reversed and the case remanded to the circuit court for further proceedings.

Reversed in part.

Justice CORRIGAN, joined by Chief Justice WEAVER, dissenting, stated that the complete omission of felony-firearm instructions was not a structural error. The defendant was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel. A fairly selected, impartial jury was instructed to consider all the evidence and argument in respect to the defense. The trial was not fundamentally unfair.

A felony-firearm charge falls within a unique category of offenses. Technically an independent offense, it is a sentence-enhancement mechanism used to deter the possession of firearms. Because it is sui generis, failure to instruct on its elements is not equivalent to a complete failure to instruct on substantive offenses.

In this case, by finding the defendant guilty of murder, the jury necessarily found that he possessed a firearm during the commission of a felony. Thus, it found the functional equivalent of the felony-firearm elements.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Danielle DeJong*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for the defendant-appellant.

PER CURIAM. A jury convicted the defendant of two counts of first-degree murder and two counts of felony-firearm. The Court of Appeals affirmed. We reverse the felony-firearm convictions because the jury was not instructed on any of the elements of that offense.

We issue this opinion to iterate a bright line rule: It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt.

I

In late 1994, the defendant used a shotgun to kill two persons. They were his former spouse and a man to whom she had been married before she wed the defendant. The decedents had remained good friends,

and the defendant apparently would not accept his former spouse's preference for the company of the other man.

The defendant was charged with two counts of first-degree (premeditated) murder[1] and two counts of possessing a firearm during the commission of the murders.[2]

In introductory remarks to the prospective jurors, the circuit court read the felony-firearm charges in the information. The court thus told them that the prosecutor was alleging that the defendant

> did carry or have in his possession a firearm—to-wit: a shotgun—at the time he committed or attempted to commit a felony—to-wit: premeditated murder.

The court added, "It's known as felony firearm."

After hearing prosecution and defense witnesses, as well as closing argument, the jurors were instructed by the court. In the course of these instructions, they learned the elements of first- and second-degree murder, and of voluntary manslaughter. However, the court entirely omitted any instruction regarding the elements of felony-firearm.[3] Indeed, the only mention

---

[1] MCL 750.316; MSA 28.548.

[2] MCL 750.227b; MSA 28.424(2).

[3] MCL 768.29; MSA 28.1052 provides that "[t]he court shall instruct the jury as to the law applicable to the case . . . ." MCR 6.414(F) provides that "the court must instruct the jury as required and appropriate . . . ." We note:

> [I]n order to convict the defendant of felony-firearm, the prosecution was legally required to prove two things: first, that the defendant carried or possessed a firearm . . . ; second, that the firearm was carried or possessed during the course of any felony or attempted felony. [*Wayne Co Prosecutor v Recorder's Court Judge*, 406 Mich 374, 397-398; 280 NW2d 793 (1979). See CJI2d 11.34.]

of felony-firearm was in relation to the verdict form.[4]
Defense counsel did not object to the omission.

The jury found the defendant guilty of the murders
and both counts of felony-firearm. The circuit court
then imposed the mandatory sentences of life for
first-degree murder and two-years for felony-firearm.[5]
Later, the court denied the defendant's motion for
new trial.

After the Court of Appeals affirmed,[6] the defendant
applied to this Court for leave to appeal. Initially, we
held the case in abeyance[7] pending the decision in
*People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).
Now that *Carines* has been decided, the present case
is again before us.

II

The Court of Appeals found that it was error for
the circuit court not to instruct the jury regarding the
elements of the felony-firearm charges.[8] It neverthe-

---

[4] Without telling the jury the elements of felony-firearm, the court
explained that one such charge related to the murder of the defendant's
former spouse, and the other related to the murder of the second victim.

[5] The murder sentences were concurrent, as were the felony-firearm
sentences. *People v Sawyer*, 410 Mich 531; 302 NW2d 534 (1981). As pro-
vided by statute, the felony-firearm sentences "shall be served consecu-
tively with and preceding [the] term of imprisonment imposed for the
[murder] conviction[s]." MCL 750.227b(2);  MSA 28.424(2)(2).

[6] Unpublished opinion per curiam, issued July 10, 1998 (Docket No.
200766).

[7] Unpublished order, entered June 15, 1999 (Docket No. 112997).

[8] As indicated, the circuit court read the information to prospective
jurors on the first day of proceedings. As the Court of Appeals observed,
however, that reading was insufficient:

The trial court made these comments during the jury selection
stage of the trial proceeding and do [sic] not authoritatively state
the elements that the prosecution was required to prove to estab-
lish that defendant committed the crime of felony-firearm. In

less affirmed the felony-firearm convictions on the ground that the error was harmless beyond a reasonable doubt utilizing either Justice BRICKLEY's lead opinion in *People v Vaughn*, 447 Mich 217, 238, n 17; 524 NW2d 217 (1994), or the test stated in Justice LEVIN's dissent in *Vaughn*. 447 Mich 272.

III

As explained in *People v Grant*, 445 Mich 535; 520 NW2d 123 (1994), constitutional error such as occurred here must be classified as either structural or nonstructural. If the error is structural, reversal is automatic. *People v Anderson (After Remand)*, 446 Mich 392, 404-405; 521 NW2d 538 (1994). If the constitutional error is not structural, it is subject to the harmless beyond a reasonable doubt test. *Id.* The United States Supreme Court recently explained that most constitutional errors can be harmless, but that a limited class of constitutional errors are structural and subject to automatic reversal. *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

Structural errors, as explained in *Neder*, are intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal. *Id.* at 7. Such an error necessarily renders unfair or unreliable the determining of guilt or innocence. As the United States Supreme Court said in *Rose v Clark*, 478 US

---

accordance with well-established practice, we conclude that the trial court's duty to sua sponte instruct the jury on all elements of a charged crime must be discharged during its final instructions to the jury. Thus, the trial court erred by failing to instruct the jury on the elements of felony-firearm during its final jury instructions.

570, 577-578; 106 S Ct 3101; 92 L Ed 2d 460 (1986), structural errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.[9]

The Court in *Neder* stated as follows citing several examples of structural error:

> Indeed, we have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v United States*, 520 US 461, 468; 117 S Ct 1544; 137 L Ed 2d 718 (1997) (citing *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (complete denial of counsel); *Tumey v Ohio*, 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927) (biased trial judge); *Vasquez v Hillery*, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v Wiggins*, 465 US 168; 104 S Ct 944; 79 L Ed 2d 122 (1984) (denial of self-representation at trial); *Waller v Georgia*, 467 US 39; 104 S Ct 2210; 81 L Ed 2d 31 (1984)  (denial of public trial); *Sullivan v Louisiana*, 508 US 275; 113 S Ct 2078; 124 L Ed 2d 182 (1993)  (defective reasonable-doubt instruction). [*Id.* at 8.]

In the situation in the case at bar, the defendant was deprived of a "basic protection." The trial court's failure to instruct regarding *any* of the elements of felony-firearm, while allowing the jury to render a verdict on felony-firearm, sent the jury to its deliberative duties deprived of its essential tool: the law that was to be applied to the facts.[10] Such a defect improp-

---

[9] In *Neder*, the Court "reaffirmed" *Rose. Id.* at n 2.

[10] The dissent indicates that felony-firearm charges are sui generis and that it would not treat the omission to instruct on its elements as equivalent to a complete failure to instruct on murder, criminal sexual conduct, armed robbery or other substantive offenses. *Post* at 59-60. From this statement we discern that the dissent would agree that structural error occurs when there is a complete failure to instruct regarding the ele-

erly left the jury to speculate, i.e., the absence of any instructions regarding the elements of felony-firearm left the jury to guess what the prosecuting attorney might be required to prove. As we stated in *People v Lambert*, 395 Mich 296, 304; 235 NW2d 338 (1975), juries cannot be allowed to speculate. The court must inform the jury of the law by which its verdict must be controlled.[11] Incontrovertibly, when a jury is allowed to speculate, the subsequent verdict is not a reliable indicator of the defendant's guilt or lack thereof.

It is also possible that the failure to provide any of the elements of the charge may have suggested to the jury that the two charges were tie-barred, i.e., if the jury found defendant guilty of murder, they were then to find defendant guilty of felony-firearm. Such tie-barring would run counter to our fundamental constitutional law as it directs the jury to return a verdict. *Rose* explained that a court may not direct a verdict of guilty against a defendant no matter how clear the defendant's culpability. *Rose, supra* at 578.

---

ments of any substantive crime other than felony-firearm. We are unable to agree that the complete failure to instruct the jury regarding the elements of felony-firearm is not structural error. The title of the crime is not self explanatory. A jury may not be allowed to determine, uninformed by the elements of a crime, if a defendant is guilty of a crime. This allows for speculation. We also disagree with the dissent's claim that felony-firearm is for all practical purposes a sentence enhancement mechanism. If this were true, we would not need to submit felony-firearm charges to juries. Further, such a view suggests that the court should have told the jury that it had to convict defendant of felony-firearm if it found that defendant was guilty of first-degree murder. As explained later, the jury was free to acquit defendant of felony-firearm even if it convicted defendant of first-degree murder.

[11] See also *People v Newland*, 459 Mich 985 (1999) (a felony-firearm conviction must be reversed where the trial court failed to instruct the jury on the law by which the verdict was to be controlled).

The reason for this is the Sixth Amendment's clear command that the state must afford a trial with a jury at the defendant's request in serious criminal cases. *Duncan v Louisiana*, 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968). This means that when a jury is empaneled, the jury, not a judge, renders the verdict. This does not happen when the jury is effectively led to tie one conviction to another. Indeed, this Court has even recognized that a jury is not required to reach consistent verdicts with regard to a felony-firearm charge and the accompanying felony. *People v Lewis*, 415 Mich 443; 330 NW2d 16 (1982).

To compel the conviction of felony-firearm is to deprive the defendant of his constitutional right to a jury trial and thus requires automatic reversal no less than in the situation where other basic protections are not afforded. It is no answer when such rights are denied for the state to argue that the deprivation was harmless.

*Neder* and *Carines*, *supra*, held that an instructional error regarding one element of a crime, whether by misdescription or omission, is subject to a harmless error analysis. Our holding today is not inconsistent with these cases. With some but not all elements missing, the jury still may be able to fulfill its intended function. But, with all elements missing, such as in a case where only the title of the crime was given to the jury, the reliability of the subsequent verdict is grossly undermined. Thus, we find that the failure to provide the jury with the definition of any of the elements of the crime charged is an error of much greater magnitude than presenting less than all elements and fits within the limited class of cases that are properly characterized as structural and

therefore automatically reversible.[12] Defendant is entitled to a new trial on the felony-firearm charges because the jury's verdict, uninformed of the elements of the crime, did not reliably serve its function of determining guilt or innocence.

Our decision is supported by *Harmon v Marshall*, 69 F3d 963 (CA 9, 1995), where the United States Court of Appeals for the Ninth Circuit found that a complete failure to instruct on any elements of an offense is a ground for automatic reversal. The court in *Harmon* explained:

> As the district court quite properly concluded, this error requires automatic reversal. The error undoubtedly affected Harmon's constitutional right to a proper jury verdict. See [*Sullivan v Louisiana*, 508 US 275, 277-278; 113 S Ct 2078; 124 L Ed 2d 182 (1993)] (Due Process Clause and Sixth Amendment require that the fact finder determine beyond a reasonable doubt the facts necessary to establish each element of offense). We find it difficult to imagine a more fundamental or structural defect than allowing the jury to deliberate on and convict Harmon of an offense, for which it had *no* definition. See *id.* at [282-283] (deprivation of the "basic protection" of having a jury make the requisite finding of guilt "unquestionably qualifies" as a "structural defect" under [*Arizona v Fulminante*, 499 US 279; 111 S Ct 1246; 113 L Ed 2d 301 (1991)]). In effect, the jury was free to convict Harmon without finding that the State proved any of the requisite elements of the crime. There is no way we can determine the extent to which Harmon's convictions

---

[12] The dissent would overlook the error on the basis of the "functional equivalence" test, i.e., the error is harmless when other facts found by the jury are so closely related to the omitted element that no rational jury could find those facts without also finding the missing element. However, the "functional equivalence" test assumes the error was not structural. Because we find the error to have been structural, the "functional equivalence" test does not apply. Indeed, in *Neder* the Court specifically stated that such a test "would be inconsistent with our traditional categorical approach to structural errors." *Neder, supra* at 14.

were actually affected by the failure to instruct, because we simply cannot tell how the jury reached its decision.

Marshall insists that the evidence establishing Harmon's guilt on these very serious charges was overwhelming. We agree. But this does not change our result. We cannot judge the defendant guilty; that role is reserved for the jury. *Id.*

\*    \*    \*

We reiterate that *this is not a case where jury instructions simply omitted or misstated one or more elements of an offense,*[13] *but a wholesale failure to define an offense for the jury.* This is tantamount to telling the jury to "go in there and do whatever you think is right." The failure to instruct at all deprived Harmon of his basic right to jury findings on the elements of the crime with which he was charged, "without which a criminal trial cannot reliably serve its function." *Sullivan* [508 US 281] (citation and internal quotation marks omitted); *Fulminante*, 499 US 310 (trial infected with structural defect "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair") (citation and internal quotation marks omitted). See also *Adams v Aiken*, 41 F3d 175, 178-179 (CA 4, 1994) (under the teachings of *Sullivan*, the retroactive application of the new rule that a deficient reasonable doubt instruction violates due process is not barred by [*Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989)]), cert den [515 US 1124] 115 S Ct 2281; 132 L Ed 2d 284 (1995), accord *Nutter v White*, 39 F3d 1154, 1157-1158 (CA 11, 1994). We think it plain that there can be no funda-

---

[13] While *Harmon* was decided before *Neder*, we believe that *Neder* does not undermine *Harmon* in any respect because this is not a case where the court omitted one element of an offense, but, rather, omitted all the elements of an offense. The dissent's claim that our decision is contrary to *Neder* or *Neder*'s dissent is simply inaccurate because *Neder* is distinguishable. We are holding that the complete failure to instruct the jury regarding any of the elements of a crime is structural error. Neither the *Neder* majority nor dissent addressed such a situation. Moreover, the dissent's reliance on Justice Scalia's dissent in *Neder* is also misplaced because he specifically stated that all elements of a crime cannot be taken from a jury. *Neder, supra* at 30.

mental fairness in a system that allows a jury to convict a
defendant of a crime, for which it has utterly no definition.
[*Harmon, supra* at 966-967 (emphasis added).]

We agree with this portion of the analysis in
*Harmon.*

In sum, a jury's conviction must be set aside where
the court omitted instructions on all the elements of
an offense. Because the failure to instruct on all ele-
ments of an offense is structural error, not "trial
error," we do not employ the harmless analysis of
*Neder/Carines.* Rather, we find that such a complete
failure is a structural defect affecting the very frame-
work of the trial process. *Fulminante, supra.* Accord-
ingly, we reverse the defendant's felony-firearm con-
victions and remand this case to the circuit court for
further proceedings in accordance with this opinion.
If the prosecuting attorney chooses, he may retry the
defendant on the felony-firearm charges.

We reverse in part the judgments of the circuit
court and the Court of Appeals. With regard to the
defendant's appeal of his first-degree murder convic-
tions, we deny leave to appeal.

CAVANAGH, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ.,
concurred.

CORRIGAN, J. I dissent from the reversal of defend-
ant's felony-firearm convictions. I would affirm the
Court of Appeals conclusion that the plain instruc-
tional error was subject to harmless error analysis.

Defendant shot and killed his ex-wife and another
of her ex-husbands. He was convicted by a jury of
two counts of first-degree premeditated murder and
felony-firearm. The Court of Appeals affirmed,
rejecting defendant's unpreserved claim that the trial

court's failure to instruct the jury on the elements of felony-firearm required reversal. Unpublished opinion per curiam, issued July 10, 1998 (Docket No. 200766).

I would not grant relief under the plain error doctrine for this unpreserved but constitutional error of omitting felony-firearm instructions. Defendant's trial was not fundamentally unfair, nor was the trial an unreliable vehicle for deciding defendant's guilt of felony-firearm. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999), provides:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." [Citations omitted.]

Defendant has satisfied the first two *Carines* requirements. The trial court erred in failing to instruct on the elements of felony-firearm,[1] and its

---

[1] The standard felony-firearm instruction, CJI2d 11.34, provides:

(1) The defendant is also charged with the separate crime of possessing a firearm at the time [he/she] committed [or attempted to commit] the crime of _____.

(2) To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

error was clear or obvious. I part company with my colleagues because defendant has not satisfied the third *Carines* requirement. His substantial rights were not affected by the absence of the felony-firearm instructions. He has not shown that the error affected the outcome.

The jury was fully instructed on first-degree premeditated murder. It is undisputed that a firearm was used to kill both victims. A 911 recording contained defendant's and his ex-wife's voices, followed by the sound of a gunshot. Both victims died from gunshot wounds. Police officers observed defendant leaving the murder scene carrying a shotgun; indeed, defendant admitted that he shot the victims. Thus, having found defendant guilty of premeditated murder, the jury could not rationally have acquitted defendant of the felony-firearm counts. It could not rationally have concluded that defendant committed the murders without also concluding that he possessed a firearm during the commission of those murders.

The evidence overwhelmingly established defendant's guilt of the principal charges. I thus question whether the omission of these instructions seriously affected the fairness, integrity or public reputation of judicial proceedings.

A felony-firearm charge falls within a unique category of offenses in our criminal justice system. Technically an independent offense, a felony-firearm

---

(3) First, that the defendant committed [or attempted to commit] the crime of _____, which has been defined for you. It is not necessary, however, that the defendant be convicted of that crime.

(4) Second, that at the time the defendant committed [or attempted to commit] that crime [he/she] knowingly carried or possessed a firearm.

charge is, for all practical purposes, a sentence-enhancement mechanism used to deter the possession of firearms. Since felony-firearm is sui generis, I would not treat the omission to instruct on its elements as equivalent to a complete failure to instruct on murder, criminal sexual conduct, armed robbery, or other substantive offenses.

In reversing, the majority views the trial court's failure to instruct on the felony-firearm elements as a structural error defying harmless error analysis.[2] I do not accept that view. In *Neder v United States*, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999), the Supreme Court applied the harmless error rule to a trial court's failure to instruct on an element of an offense. The majority observed that most constitutional errors are subject to harmless error analysis. *Id.*, p 8. Error is structural, and thus subject to automatic reversal, only in a "very limited class of cases." *Id.* Examples of structural error are the complete denial of counsel, a biased trial judge, racial discrimination in selecting a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *Id.*[3] The *Neder* Court further stated:

> [Structural] errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as

---

[2] In the context of plain error review, the United States Supreme Court has left open the possibility of a special category of errors, yet to be defined, in which prejudice is presumed or that may be corrected regardless of the effect on the outcome. See *Carines*, *supra*, p 763, n 8.

[3] It should be recalled that *Neder* involved a *harmless* error analysis. Whether all the examples in *Neder* of structural error would require reversal in the context of *plain* error review is unclear.

fundamentally fair." Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. [*Id.*, pp 8-9 (citation omitted).]

" '[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.' " *Id.*, p 8.

The complete omission of felony-firearm instructions here was not, in my view, a structural error. Defendant "was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to [the defendant's] defense . . . ." *Id.*, p 9. Defendant's trial was not fundamentally unfair and I cannot conclude that the trial was an unreliable vehicle for determining defendant's guilt or innocence.

Instead of applying *Neder*'s analysis, the majority relies on a pre-*Neder* case, *Harmon v Marshall*, 69 F3d 963 (CA 9, 1995), for the proposition that the failure to instruct on all elements of an offense is structural error. The majority makes no attempt to discern whether *Harmon* remains valid in light of *Neder*. *Harmon* relied in part on Ninth Circuit case law holding that failure to submit *one* element to the jury "is reversible per se." *Id.*, pp 965-966. That proposition is no longer correct under *Neder*.

More importantly, the majority fails to discern the key distinction between *Harmon* and the instant

case. *Harmon* rejected the argument that reversal was not required because the evidence of guilt was "overwhelming." The court noted that only the jury could find the defendant guilty: "No matter how clear evidence may be, the Sixth Amendment requires that the jury, not the judge, must find the facts necessary to decide the elements of a crime beyond a reasonable doubt." *Id.*, p 966 (citation and internal quotation omitted).

The situation here is quite different. The prosecution does not merely contend that the evidence of guilt was "overwhelming." Rather, the *jury itself* found the facts that rationally required a finding that defendant was guilty of felony-firearm. Since a firearm was indisputably used in the murder, the jury found the facts that established defendant's guilt of felony-firearm when it convicted him of murder. The majority completely overlooks this crucial distinction.

Indeed, even Justice Scalia's *Neder* dissent is contrary to the majority's holding! Justice Scalia observed that a court cannot direct a finding of guilt. Justice Scalia further reasoned:

> The failure of the court to instruct the jury properly— whether by omitting an element of the offense or by so misdescribing it that it is effectively removed from the jury's consideration—can be harmless, if the elements of guilt that the jury did find necessarily embraced the one omitted or misdescribed. . . . Where the facts necessarily found by the jury (and not those merely discerned by the appellate court) support the existence of the element omitted or misdescribed in the instruction, the omission or misdescription is harmless. For there is then no "gap" in the verdict to be filled by the factfinding of judges. [*Neder, supra*, pp 35-36.]

Here, by finding that defendant murdered the victims with a gun, the jury necessarily found that defendant possessed a firearm during the commission of a felony. Thus, there is no "gap" to be filled by the fact finding of judges. The jury's findings on the murder counts "necessarily embraced" the essential elements of felony-firearm. The majority contravenes not only the *Neder* majority, but even the *Neder* dissent!

Justice Scalia also opined in *Neder* that reversal may not be required where, as in the instant case, the defendant fails to object to the instructional error. The plain error rule of *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993), requires more than a showing of prejudice to warrant reversal. *Neder, supra*, p 34. Justice Scalia thus observed that "just as the absolute right to trial by jury can be waived, so also the failure to object to its deprivation at the point where the deprivation can be remedied will preclude automatic reversal." *Id.*, p 35. "[O]ne who sleeps on his rights . . . may lose them." *Id.*, n 1.

The majority asserts that my reliance on Justice Scalia's dissent is misplaced because Justice Scalia stated that all elements of a crime may not be taken from a jury. The majority has ignored the tone and context of Justice Scalia's statement. Justice Scalia made this assertion as part of his criticism of the *Neder* majority's analysis. He was emphasizing what he perceived as the lack of a principled basis for the majority's decision by noting that the majority had left to future improvisation the number of elements that may be taken from a jury. Justice Scalia's principal concern was that the majority had departed from the functional equivalence test.

In this regard, Justice Scalia's criticism applies equally to the majority's holding here. The majority acknowledges that omission of one element may be harmless, but asserts that omission of every element may never be harmless. Where does the majority draw the line? May omission of every element but one be regarded as harmless? Why? The majority has failed to identify any principle that would guide future courts in resolving these questions.

The majority also ignores Justice Scalia's distinction between speculation that confirms the jury's verdict and speculation that leads to a decision that the jury never made:

> The difference between speculation directed towards confirming the jury's verdict (*Sullivan*[4]) and speculation directed towards making a judgment that the jury has never made (today's decision) is more than semantic. Consider, for example, the following scenarios. If I order for my wife in a restaurant, there is no sense in which the decision is hers, even if I am sure beyond a reasonable doubt about what she would have ordered. If, however, while she is away from the table, I advise the waiter to stay with an order she initially made, even though he informs me that there has been a change in the accompanying dish, one can still say that my wife placed the order—even if I am wrong about whether she would have changed her mind in light of the new information. Of course, I may predict correctly in both instances simply because I know my wife well. I doubt, however, that a low-error rate would persuade my wife that my making a practice of the first was a good idea.
>
> It is this sort of allocation of decisionmaking power that the *Sullivan* standard protects. The right to render the verdict in criminal prosecutions belongs exclusively to the jury; reviewing it belongs to the appellate court. "Confirm-

---

[4] *Sullivan v Louisiana*, 508 US 275; 113 S Ct 2078; 124 L Ed 2d 182 (1993).

ing" speculation does not disturb that allocation, but "substituting" speculation does. Make no mistake about the shift in standard: Whereas *Sullivan* confined appellate courts to their proper role of reviewing verdicts, the Court today puts appellate courts in the business of reviewing the defendant's guilt. The Court does not—it cannot—reconcile this new approach with the proposition that denial of the jury-trial right is structural error. [*Neder, supra,* pp 38-39.]

The majority has not addressed Justice Scalia's distinction. Unlike the *Neder* case, the jury's findings here necessarily embrace the omitted elements. It is not necessary for us to guess what the jury might have found had it been properly instructed. The jury's findings are the functional equivalent of the felony-firearm elements. Thus, we are simply confirming the jury's verdict rather than making a decision that the jury never made.

The majority correctly notes that the *Neder* majority questioned the functional equivalence test. However, one of the *Neder* majority's reasons for doing so was that prior cases applying harmless error review would not satisfy the functional equivalence test. *Id.,* p 13. Thus, the case at bar is actually a *stronger* candidate for affirmance than *Neder,* since it actually satisfies the test favored by the dissent and rejected by the majority as too difficult to meet!

I do not mean to suggest that Justice Scalia's dissent rather than the *Neder* majority opinion controls. My point is simply that the majority here has not fully considered the current state of harmless error jurisprudence.

The majority also fails to consider another key standard identified in *Neder.* Error is not subject to harmless error review if it vitiates all the jury's find-

ings. *Id.*, p 10. See also *Sullivan v Louisiana, supra.*
The error here did not vitiate the jury's findings
because the jury did find that defendant possessed a
firearm during the commission of a felony despite the
court's instructional omission. Indeed, the majority's
decision vitiates the jury's findings!

The majority further ignores Chief Justice Rehn-
quist's instructive concurrence in *Sullivan.* The
Supreme Court has definitively "rejected the argu-
ment that, as a general matter, the Sixth Amendment
prohibits the application of harmless-error analysis in
determining whether constitutional error had a preju-
dicial impact on the outcome of a case." *Sullivan,
supra* at 282-283. In the case of a constitutionally
deficient reasonable doubt instruction, however, the
entire premise of harmless error review was absent.
*Id.*, p 283. In that circumstance, "there can be no fac-
tual findings made by the jury beyond a reasonable
doubt in which an appellate court can ground its
harmless-error analysis." *Id.* While harmless error
review always involves some speculation about the
jury's decision-making process, it has nonetheless
become "an integral component of our criminal jus-
tice system." *Id.*, p 284. "[A] constitutionally deficient
reasonable-doubt instruction is a breed apart from the
many other instructional errors that [the Court has]
held are amenable to harmless-error analysis"
because it "will always result in the absence of
'beyond a reasonable doubt' jury findings." *Id.*, pp
284-285.

Unlike Chief Justice Rehnquist's opinion in
*Sullivan*, the majority here offers no compelling rea-
son to depart from the norm of reviewing for harm-
lessness. The jury was properly instructed on the ele-

ments of murder. In reaching its verdict on premeditated murder, the jury necessarily found the functional equivalent of the felony-firearm elements. Thus, the jury made the necessary "beyond a reasonable doubt" findings on which to ground harmless error review. On the unique facts of this case, where the jury necessarily found the elements of felony-firearm beyond a reasonable doubt, the court's failure to instruct is not "a breed apart" from other errors that are subject to harmless error review.[5]

Harmless error review is unavailable where the wrong entity judged the defendant guilty. *Rose v Clark*, 478 US 570, 578; 106 S Ct 3101; 92 L Ed 2d 460 (1986). Thus, a directed verdict for the prosecution could never be harmless because it would eviscerate the Sixth Amendment jury trial guarantee. The majority fails to acknowledge the distinction between a directed verdict and the instant case. When a court grants a directed verdict, it takes the decision away from the jury. In contrast, the jury here judged defendant guilty despite the court's instructional omission. Its finding of guilt of felony-firearm was supported by its implicit findings in connection with the murder counts. Because the correct entity found defendant guilty, the trial court's error may be harmless.

---

[5] The situation would be different if the court had failed to instruct on elements of a crime for which the jury did not make functionally equivalent findings. Suppose, for example, that the court here had failed to instruct on the elements of murder. The jury then would have made no findings that necessarily embraced the omitted elements of murder. In such a circumstance, "the absence of 'beyond a reasonable doubt' jury findings" would make harmless error review inconsistent with the Sixth Amendment jury trial guarantee.

The majority further suggests that because juries may return inconsistent verdicts, defendant has been denied his right to a jury trial. The majority suggests that the jury could have found defendant not guilty of felony-firearm in spite of its implicit finding in connection with the murder counts that defendant possessed a firearm during the commission of a felony.

While a jury has the raw power to return inconsistent verdicts by virtue of the prosecution's inability to seek appellate review of an acquittal, a defendant has no right to have the jury exercise that power. Indeed, returning an inconsistent verdict is *an assumption of power that the jury has no legal right to exercise. United States v Powell,* 469 US 57, 66; 105 S Ct 471; 83 L Ed 2d 461 (1984). See also *People v Bailey,* 451 Mich 657, 671, n 10; 549 NW2d 325 (1996) ("simply because the jury has the power to dispense mercy and reach conclusions contrary to the weight of the evidence does not mean it has the right to do so"). I would not elevate the raw power into a right to seek inconsistent verdicts.

The majority speculates that the trial court may have "tie-barred" the felony-firearm charges to the murder charges. In other words, the majority suspects that by failing to instruct on felony-firearm, the trial court implicitly told the jury that if it found defendant guilty of murder, then it had to find him guilty of felony-firearm. Nothing in the record supports this theory. Indeed, the trial court explicitly told the jury that felony-firearm is a *separate* crime that must be considered separately from the murder counts. The court went on to explain to the jury that it could "find the defendant guilty of all *or any one or any combination* of these crimes or guilty of a less serious crime

or not guilty." (Emphasis added.) Thus, the record unequivocally repudiates the majority's "tie-barring" theory.

Finally, a recent Rhode Island Supreme Court case involving similar facts supports the conclusion that defendant's convictions should not be reversed. In *State v Hazard*, 745 A2d 748 (RI, 2000), the defendant was convicted following a jury trial of assault with intent to murder, discharging a firearm from a motor vehicle in a manner that created a substantial risk of death or serious personal injury (drive-by shooting), and carrying a pistol without a license. On the drive-by shooting count, the trial court erroneously instructed the jury that the weapon used by the defendant was a firearm as a matter of law. Relying on *Neder*, the Rhode Island Supreme Court determined that the error was subject to harmless-error analysis because the jury made findings on the other charges that were the "functional equivalent" of the firearm element. *Id.*, p 753.

> The testimony at trial demonstrated that the only contact between defendant and Jones [the victim] was a volley of shots. It is clear from the trial record that no other weapon was suggested by the evidence presented at trial, nor was any other form of assault alleged to have occurred. It was therefore necessary for the jurors to find that defendant fired the gun at Jones for them to convict him of the crime of assault with intent to murder. In light of the jury's finding that defendant fired a volley of shots at Jones, and at least one shot found its target, it is clear that the jury necessarily must have concluded that a firearm was used in the shooting. We conclude that the finding of guilt on count one, assault with intent to murder, is the functional equivalent of the finding of the firearm element in count two. [*Id.*, pp 753-754.]

The jury must "have found that there was a firearm for it to have found that defendant shot Jones." *Id.*, p 755.

The same reasoning applies here. By finding defendant guilty of murder, the jury necessarily found that he possessed a firearm during the commission of a felony. Thus, the jury found the functional equivalent of the felony-firearm elements.

The majority disregards these authorities in favor of a generic rule on the basis of one Ninth Circuit case that failure to instruct on all elements is *always* structural. At the same time, the majority confuses appellate fact finding with a determination that the jury necessarily found facts that establish the omitted elements.

WEAVER, C.J., concurred with CORRIGAN, J.