*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GARY EUGENE NICOLL,

Defendant-Appellant.

UNPUBLISHED
May 20, 2025
1:47 PM

No. 364695
Menominee Circuit Court
LC No. 22-004437-FH

ON REMAND

Before: CAMERON, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

This case comes to us on remand from our Supreme Court. *People v Nicoll*, ___ Mich ___ (2024) (Docket No. 167597). The prosecution applied for leave to appeal our opinion, which reversed and vacated the convictions and sentences of defendant, Gary Eugene Nicoll, see *People v Nicoll*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 364695). In lieu of granting leave to appeal, our Supreme Court reversed and remanded for us to consider the other issues Nicoll raised, which we declined to address. *Nicoll*, ___ Mich at ___; slip order at 1.

We conclude that none of Nicoll's remaining issues establish reversible error. We therefore affirm following remand from our Supreme Court.

## I. FACTUAL BACKGROUND, TRIAL, AND SENTENCING

This case started with Nicoll's contact with the Menominee County Sheriff's deputies. We described that interaction in detail in the prior opinion. See *id.* at 1-4. We incorporate that background by reference. Critically, Menominee County Sheriff's Deputy Aaron Ihander was at an intersection with his partner, Menominee County Sheriff's Deputy Max Scheriff, when he saw Nicoll, whom the deputy recognized from previous police interactions, drive past him. Deputy Ihander contacted his central dispatch to determine whether Nicoll had any outstanding warrants, and was informed that there a felony bench warrant had been issued for Nicoll's arrest. Nicoll also had a misdemeanor warrant for domestic violence that Deputy Ihander was informed of later. The deputy followed Nicoll and activated his emergency lights and siren to attempt a traffic stop.

-1-

Nicoll did not stop or pull over, and after approximately two miles, he pulled into a driveway that led to his property.

Nicoll eventually got out of his vehicle and began running. Deputy Ihander and Deputy Scheriff searched for Nicoll on foot. After locating Nicoll, the deputies instructed him to put his hands behind his back; however, Nicoll did not comply and instead put his hands into his pockets. Nicoll failed to comply with police orders for several minutes before finally submitting to arrest.

At a motion hearing before trial, the trial court considered the admissibility of certified copies of the two bench warrants on which Deputy Ihander arrested Nicoll. Defense counsel argued that the copies of the bench warrants were prejudicial and irrelevant. The trial court ruled that it would "not allow the certified copies of the bench warrant to come in unless there is an issue or a challenge to the reason for the stop, being that there are outstanding bench warrants . . . ." According to the court, "if there is any challenge, either by way of argument or testimony that there is an issue with why he was being stopped, then those certified copies can come in, either in the case in chief or in rebuttal." The trial court noted that its concern about the physical copies of the warrants was that they revealed the bases for the warrants, which, according to the court, were irrelevant. At trial, after Nicoll challenged the timing of when Deputy Ihander learned of the warrants and whether he verified their validity, the trial court admitted the certified copies of the warrants with no objection from defense counsel.

After the close of evidence, the trial court instructed the jury. Prior to trial, the court gave oral instructions on the elements of second-degree fleeing and eluding. But at the close of trial, although it was contained in the written jury instructions, the trial court neglected to orally instruct the jury on the elements fleeing and eluding. After the instructions were read, the trial court asked whether there were any issues with jury instructions as read, to which defense counsel responded: "No, Your Honor." The jury found Nicoll guilty as charged.

## II. APPELLATE PROCEEDINGS

This Court vacated Nicoll's convictions and remanded for a new trial. *Id*. at 1. On appeal, Nicoll argued that "the prosecutor engaged in misconduct warranting reversal by eliciting testimony about not only the validity of the warrants for his arrest, but their underlying basis, and Nicoll's general criminality and noncompliance with court orders," and that Nicoll was "denied effective assistance of counsel when his lawyer failed to object when the prosecutor elicited testimony contrary to the trial court's prior order or that was otherwise clearly objectionable." *Id*. at 4. In our initial opinion, this Court agreed with Nicoll that defense counsel provided ineffective assistance by failing to object to testimony about the underlying bases for the warrants, Nicoll's general criminality, and his noncompliance with court orders. *Id*. at 4. This Court discerned no valid strategy behind counsel's decision to not object when the court had already prohibited admitting this evidence. *Id*. at 4-5.

This Court identified four groups of evidence: (1) that Nicoll had prior interactions with the deputy who arrested him, (2) the prosecutor's introducing the prior warrants that led to Nicoll's arrest, (3) the prosecution's introducing the bases of those warrants, and (4) evidence of Nicoll's character of general criminality and noncompliance with court orders. *Id*. at 5. This Court noted that a redacted copy of the warrant would have addressed the lawfulness of Nicoll's stop or arrest.

*Id*. at 6 n 3. It was also permissible for the deputy to testify that he knew Nicoll without saying how. *Id*. However, we stated that "[t]he remaining categories of evidence at issue were inadmissible for the reasons provided in this opinion." *Id*.

This Court opined that there was no strategic basis for counsel's failure to object to the admission of the warrants or their bases. *Id*. at 7. Had defense counsel made such an objection, the trial court should have sustained it. *Id*. at 8. Further, the prosecution had conceded that questions regarding whether Nicoll did not appear at court when he was supposed to and was a criminal who did not show up for court were improper. *Id*.

This Court also opined that the prosecution had introduced impermissible other-acts evidence regarding Nicoll's other crimes. *Id*. at 9-10. Redacted versions of the warrants would have been admissible because they directly concerned the lawfulness of Nicoll's arrest and the officers' orders. *Id*. at 10. However, the prosecution had failed to identify a proper purpose for introducing the underlying bases for the warrants, the details of Nicoll's domestic violence, and Nicoll's habit of failing to appear at court. *Id*. at 11. Because the evidence violated the court rules concerning relevance, defense counsel provided ineffective assistance by failing to object to the evidence because "[s]uch an objection would have, or should have, been sustained." *Id*. This Court also determined that Nicoll was prejudiced by the impermissibly admitted evidence because "[t]he introduction of impermissible evidence of Nicoll's criminal character, habit of not complying with lawful orders, and other-acts evidence rendered an otherwise flimsy but passable defense effectively nonexistent." *Id*. at 13. This Court agreed with Nicoll's argument that he was "denied effective assistance of counsel when his lawyer failed to object when the prosecutor elicited testimony contrary to the trial court's prior order or that was otherwise clearly objectionable." *Id*. This Court held that counsel's deficient failures to object necessarily affected the outcome of the proceedings, vacated Nicoll's convictions, and remanded for a new trial. *Id*. at 13.

Because this Court resolved the issue on the basis of Nicoll's ineffective-assistance claim, this Court explicitly declined to address Nicoll's "remaining claims, including his claim of instructional error related to the trial court's failure to instruct the jury on the elements of second-degree fleeing and eluding in its final instructions." *Id*. However, this Court "nonetheless acknowledge[d] that the trial court's failure to provide final instruction on one of the charges compounds the prejudice and further undermines our confidence in the conviction." *Id*. This Court reasoned that the failure to instruct the jury on the elements of the final charge further amplified the risk of prejudice. *Id*. at 13-14. The majority opinion[1] explicitly declined to address whether the prosecutor committed misconduct:

---

[1] In a concurring opinion, Judge YOUNG opined that "defense counsel was only ineffective here because counsel failed to object to the prosecution's misconduct." *People v Nicoll*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 364695) (YOUNG, J., concurring), p 1. Judge YOUNG reasoned that the prosecution's questions elicited impermissible character and other-acts evidence. *Id*. Judge YOUNG opined that the prosecution's attempts to introduce irrelevant evidence, extremely prejudicial testimony, and impermissible character and other-acts evidence prejudiced Nicoll and denied him a fair and impartial trial. *Id*.

Because we resolve this issue on Nicoll's ineffective-assistance-of-counsel claim, we need not address whether it was prosecutorial misconduct for the prosecutor to ask about the underlying basis for the warrants, i.e., domestic violence and contempt of court for failing to appear in a felony breaking-and-entering case, when the trial court previously concluded that the underlying basis for the warrant was not relevant and should not be admitted or for asking: "So he doesn't appear in court when he's supposed to?" "So that's what . . . Gary Nicoll does[?]" "He's a criminal[?]" "He doesn't show up for court; is that correct?" [*Id*. at 5 n 1.]

The dissenting opinion "wholeheartedly agree[d]" that counsel should have objected to the prosecution's statements that Nicoll was a criminal who did not show up to court, but opined that counsel's failure to object did not meet the prejudice prong of an ineffective-assistance claim. *People v Nicoll*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 364695) (CAMERON, J., dissenting), p 1. The dissent further concluded that counsel did not provide constitutionally deficient assistance by failing to object to testimony about the underlying bases for the warrants because the court's ruling did not prohibit testimonial evidence about any arrest warrant; its ruling was limited to excluding only certified copies of the bench warrants. The dissent did not address potential issues of prosecutorial misconduct. See *id*.

Our Supreme Court reversed this Court's holding, stating:

As noted by dissenting Judge CAMERON, the defendant has not demonstrated a reasonable probability that, but for his trial counsel's alleged errors, the result of the proceeding would have been different. See *Strickland v Washington*, 466 US 668, 694 (1984); *People v Carbin*, 463 Mich 590, 600 (2001). The videos submitted into evidence and the police officers' testimony clearly establish that the defendant committed the charged offenses apart from any inference drawn from his character. [*Nicoll*, ___ Mich at ___; slip order at 1.]

It remanded for this Court to consider the issues raised by Nicoll but not addressed by this Court. *Id*.

III. PROSECUTOR CONDUCT

We reiterate that this Court's previous opinion was based on Nicoll's ineffective-assistance-of-counsel subargument to his prosecutorial-misconduct claim. Although we addressed ineffective assistance of counsel related to Nicoll's prosecutorial-misconduct claim, we did not address the merits of the prosecutorial-misconduct claim.

"To preserve a claim of prosecutorial error, a defendant must timely and specifically challenge the prosecutor's statements or conduct." *People v Thurmond*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361302); slip op at 9. Because Nicoll failed to object at trial to the prosecutor's conduct on the same grounds raised on appeal, his claims of prosecutorial error are unpreserved. See *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). We review a claim of prosecutorial error de novo to determine whether the identified conduct deprived the defendant of a fair trial. See *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting a

defendant's substantial rights. *Thurmond*, ___ Mich App at ___; slip op at 9. We review de novo preliminary questions of law regarding admissibility of evidence. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

"A prosecutor commits error by 'abandon[ing] his or her responsibility to seek justice and, in doing so, den[ying] the defendant a fair and impartial trial.' " *Thurmond*, ___ Mich App at ___; slip op at 10 (citation omitted; alterations in *Thurmond*). A "prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Accordingly, "prosecutorial [error] cannot be predicated on good-faith efforts to admit evidence." *Id*. at 660. See also *People v Solloway*, 316 Mich App 174, 203; 891 NW2d 255 (2016). We also may not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) (quotation marks and citation omitted).

Nicoll fails to show that the prosecution's questions regarding the warrants deprived him of a fair trial or prejudiced him. After he attempted to cast doubt on the officer's knowledge of the warrants, the trial court ultimately admitted the certified copies of the two bench warrants—without any objection from defense counsel—which explicitly stated the purposes for the warrants. He is not entitled to appellate relief on the basis of the prosecution's actions regarding this evidence. See *Thurmond*, ___ Mich App at ___; slip op at 10.

Nicoll additionally argues that the prosecutor committed error by asking Deputy Ihander whether Nicoll was a "criminal" who "doesn't show up for court." The prosecution concedes that these statements were improper but argues that the error was not prejudicial. We agree that these statements were improper. And, as our Supreme Court observed, the video is conclusive evidence of Nicoll's guilt, so we do not conclude that the error—despite its egregious nature—was prejudicial in the context of this case. The prosecutor's improper comments introduced a risk that the jury might convict Nicoll on the basis of his character rather than on the basis of his guilt beyond a reasonable doubt of the charged offenses. See *Thurmond*, ___ Mich App at___; slip op at *5*. With weaker evidence of a defendant's guilt, such an error may have made a difference. Here, a curative instruction "could have alleviated any prejudicial effect" of this error, *Bennett*, 290 Mich App at 476 (quotation marks and citation omitted), and Nicoll cannot demonstrate that the error resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. See *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020). Following the remand, we find no basis to reverse the conviction on prosecutorial misconduct because Nicoll cannot establish prejudice.

## IV. JURY INSTRUCTIONS

Nicoll also challenges the trial court's failure to orally instruct the jury on the elements of fleeing and eluding during the final jury instructions. He concedes that this question is not preserved for appeal, but he argues that the trial court's failure to orally instruct the jury on the elements of the offense was a plain, structural error that affected his right to a properly instructed jury. Nicoll argues further that trial counsel's failure to object to the court's plain error constituted ineffective assistance of counsel. We disagree.

A defendant preserves a claim of instructional error by challenging the jury instructions in the trial court. See *People v Czuprynski*, 325 Mich App 449, 466; 926 NW2d 282 (2018). This Court reviews de novo preserved claims of instructional error and "must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). An unpreserved claim of instructional error is reviewed for plain error affecting the defendant's substantial rights. *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Stokes*, 333 Mich App at 307 (quotation marks and citations omitted; alteration in *Stokes*).]

The Michigan Supreme Court "has defined 'waiver' as 'the intentional relinquishment or abandonment of a known right.' " *Kowalski*, 489 Mich at 503 (citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted).

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *Id*. at 501. "A court must properly instruct the jury so that [the jury] may correctly and intelligently decide the case." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citation omitted; alteration in *Traver*). Pursuant to MCR 2.513(A) and (N), the trial court must orally instruct the jury both before and after the presentation of the proofs, and must provide written instructions for the jury to use during deliberations. In *People v Duncan*, 462 Mich 47, 48; 610 NW2d 551 (2000), our Supreme Court stated that "[i]t is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where *there is a complete failure* to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt." (Emphasis added.)[2] However, "an imperfect instruction is not grounds for

---

[2] However, in *People v Davis*, 509 Mich 52, 67; 983 NW2d 325 (2022), our Supreme Court distinguished between preserved structural errors subject to automatic reversal and forfeited structural errors. "[J]ust as preserved structural errors defy analysis by 'harmless-error' standards," unpreserved structural errors "defy analysis under the third prong of the plain-error standard," i.e., whether the error affected the defendant's substantial rights. *Id*. at 73 (quotation marks and citation omitted). This is because structural errors "necessarily affect a defendant's substantial rights." *Id*. at 74. "Accordingly, the existence of a forfeited structural error alone satisfies the third prong of the plain-error standard, and a defendant need not also show the occurrence of outcome-determinative prejudice." *Id*. Additionally, the existence of a forfeited structural error "creates a formal presumption" that the error "seriously affected the fairness,

setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502.

In *Traver*, 502 Mich at 28-30, the trial court provided the jury with written instructions but failed to orally instruct the jury regarding all the elements of the charged offenses. After the trial court concluded jury instructions, defense counsel expressed satisfaction with the court's jury instructions. *Id*. at 30. Our Supreme Court concluded that trial counsel's express approval of the jury instructions amounted to a waiver of this issue. *Id*. at 41. The Court noted that *Duncan*, 462 Mich at 48, did not address whether a defendant may waive a structural error arising from a complete failure to instruct the jury on the elements of an offense. *Id*. at 40 n 7. However, the Court distinguished *Traver* from *Duncan*, holding that in *Traver*, there was not a complete failure to instruct the jury; rather, "the jury here received instructions in some form or another on the elements of *all* of the offenses—it is only the *manner* in which the instructions were presented that renders them imperfect." *Id*. (emphasis in *Traver*). Therefore, the Court held "the claim of instructional error here did not amount to structural error—it is a nonstructural error and is clearly subject to a waiver analysis." *Id*.

Likewise, here, although the trial court failed to orally instruct the jury on the elements of fleeing and eluding during its final jury instructions, the trial court did instruct the jury on all the elements of fleeing and eluding during its preliminary jury instructions. Moreover, the jurors were also given written jury instructions that contained the elements of fleeing and eluding and the trial court instructed the jury that "[a]s you discuss the case, should think about all my instructions together as the law you are to follow." Contrary to Nicoll's assertions, there was not *a complete failure* to provide the jury with the elements of fleeing and eluding. And by expressing clear satisfaction with the trial court's reading of the juror instructions, counsel waived the issue, and it is not subject to appellate review. *Id*. at 41. See also *People v Flores*, 346 Mich App 602, 612-613; 13 NW3d 668 (2023).

Nicoll also challenges his trial court's failure to object to the court's error, arguing that it amounted to the ineffective assistance of counsel. Whether a defendant received ineffective assistance of counsel is a mixed question of constitutional law and fact. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Factual findings are reviewed for clear error, and constitutional determinations are reviewed de novo. *Id*. Clear error exists if the reviewing court "is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted).

Criminal defendants are entitled to the assistance of counsel under the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. Embedded in the right to assistance of counsel is the right to receive effective assistance of counsel. *Strickland*, 466 US at 685-686. There is a strong presumption that trial counsel "rendered adequate assistance and

_____

integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 75 (quotation marks and citation omitted). Therefore, the burden is on "the prosecutor to demonstrate that the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding." *Id*. at 76. Regardless, we conclude that there was no structural error in this case.

made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks omitted), quoting *Strickland*, 466 US at 690, and a defendant has a "heavy burden" to show otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citation omitted). To establish ineffective assistance of counsel, "defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Abcumby-Blair*, 335 Mich App at 228. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

Nicoll cannot establish that counsel's failure to object to the court's oral jury instructions resulted in prejudice. The trial court orally instructed the jury on the elements of fleeing and eluding during preliminary jury instructions and provided the jury with written instructions containing all of the elements of the offense. The court instructed the jury further that it must consider *all of its instructions* as the law it must apply during deliberations. There is no "reasonable probability that, but for counsel's error, the result of the proceedings would have been different." See *id*. at 228.

## V. SENTENCING

Nicoll lastly argues that he is entitled to resentencing because the trial court used his refusal to admit guilt against him at sentencing. We disagree.

Generally, a defendant preserves an issue for appeal by raising it in the trial court. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010). A claim that a sentence was improperly calculated is preserved by raising the issue at sentencing, in a motion for resentencing, or in a motion to remand. See *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). Nicoll did not challenge the trial court's statements regarding defendant's maintenance of his innocence at sentencing. This issue is unpreserved. See *id*. An unpreserved sentencing issue is reviewed for plain error affecting a defendant's substantial rights. *People v Conley*, 270 Mich App 301, 312; 715 NW2d 377 (2006).

Both the United States and Michigan Constitutions provide that no person "shall be compelled in any criminal case to be a witness against himself." US Const., Am V; Const 1963, art 1, § 17. "This guarantee extends to the sentencing phase of the trial." *Conley*, 270 Mich App at 314 (quotation marks and citation omitted). "A sentencing court may not base a sentence, even in part, on a defendant's failure to admit guilt, but a lack of remorse can be considered at sentencing." *People v Carlson*, 332 Mich App 663, 675; 958 NW2d 278 (2020) (citation omitted). To determine whether the trial court's sentence was improperly influenced by the defendant's failure to admit guilt, we consider three factors: (1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. *Id*.

Nicoll's trial counsel informed the court that he wished to remain silent at sentencing because he was maintaining his innocence. Nicoll argues that the trial court may have penalized him at sentencing for exercising his right to remain silent, entitling him to resentencing. It is true that the trial court expressed its belief that Nicoll was guilty. But the trial court in no way attempted

to influence Nicoll into admitting guilt.  Further, the trial court did not give the impression that Nicoll's sentence would have been less severe if he had admitted guilt.  Rather, when imposing sentence, the trial court cited Nicoll's extensive criminal record, its belief that Nicoll could not be rehabilitated, his actions on the night in question, and the fact that Nicoll did not comply with the terms of his probation.  Nicoll is not entitled to resentencing.  See *id.*

We affirm.

/s/ Thomas C. Cameron
/s/ Noah P. Hood
/s/ Adrienne N. Young