PEOPLE v GREEN (ON REMAND)

Docket No. 202259. Submitted March 20, 2000, at Lansing. Decided May 9, 2000, at 9:10 A.M.

Jimmy E. Green was convicted by a jury in the Washtenaw Circuit Court, Richard E. Conlin, J., of assault with a dangerous weapon and of two counts of first-degree criminal sexual conduct and was sentenced as a fourth-offense habitual offender. The Court of Appeals, GRIFFIN, P.J., and MCDONALD and WHITE, JJ., in an unpublished opinion per curiam, issued June 25, 1999 (Docket No. 202259), reversed and remanded for a new trial, holding that, without a showing of prejudice, reversal was required because the jury selection procedure used by the trial court did not conform to the requirements of the Michigan Court Rules. The clerk of the court had used a computer to randomly select names from the jury pool and listed those names in numerical order, using the individuals' assigned juror numbers. The list had constituted the venire. Rather than place the names in a container for a random blind draw, the clerk had then called the first fourteen names on the list. When a prospective juror was excused for cause or by peremptory challenge, the replacement venireman had been the next individual on the list in numerical order. The prosecution sought leave to appeal to the Supreme Court, which, in lieu of granting leave, remanded the case to the Court of Appeals for consideration of whether the jury selection method used was fair and impartial under MCR 2.511(A)(4). 461 Mich 969 (2000).

On remand, the Court of Appeals held:

MCR 2.511(A)(2) provides that in an action that is to be tried before a jury, the names or corresponding numbers of the prospective jurors shall be deposited in a container, and the prospective jurors must be selected for examination by a random blind draw from the container. MCR 2.511(A)(4), however, provides that prospective jurors may be selected by any other fair and impartial method directed by the court or agreed to by the parties. Deviations from the standard jury selection procedure of MCR 2.511(A)(2) that are fair and impartial and that do not implicate a "struck jury method" or the right to exercise peremptory challenges pursuant to MCR 2.511(F) are valid under MCR 2.511(A)(4).

The procedure used in this case was valid under MCR 2.511(A)(4) despite a flaw that allowed predictability of which juror would be called next on the numerical list for replacement of a challenged juror. The flaw was not fatal inasmuch as replacement jurors did not strictly follow the order on the list because some jurors who already had been excused from service remained on the list, thus lessening the certainty of which juror was next. The trial court must not employ this procedure in the future. The element of predictability, however slight, should be eliminated from the selection process to ensure that randomness is preserved and protected to the fullest degree.

Affirmed.

JURY — SELECTION — COURT RULES.

A jury selection method other than by random blind draw from a container bearing the names of prospective jurors or their corresponding juror numbers must be fair and impartial and must not implicate a "struck jury method" or the right to exercise peremptory challenges (MCR 2.511[A][4], [F]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Senior Assistant Prosecuting Attorney, for the people.

*Ferris & Salter, P.C.* (by *Don Ferris*), for the defendant on appeal.

ON REMAND

Before: GRIFFIN, P.J., and MCDONALD and WHITE, JJ.

GRIFFIN, P.J. Following a jury trial, defendant was convicted of assault with a dangerous weapon, MCL 750.82; MSA 28.277, and two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e). Defendant was sentenced as an habitual offender, fourth offense, MCL 769.12; MSA 28.1084, to five to fifteen years' imprisonment for the assault conviction and life imprisonment for each

criminal sexual conduct conviction. Defendant appealed as of right, and, of the numerous issues presented, the sole question found to be meritorious by this Court was defendant's contention that reversal was required, without a showing of prejudice, because the jury selection procedure used by the Washtenaw Circuit Court did not conform to the requirements set forth in Michigan's court rules.

In an unpublished opinion per curiam, issued June 25, 1999 (Docket No. 202259), this Court[1] followed the majority opinion in *People v Colon*, 233 Mich App 295; 591 NW2d 692 (1998), in this regard and reversed defendant's conviction because of the noncompliant jury selection procedure. Thereafter, in response to the prosecution's delayed application for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, remanded to this Court "for consideration of whether the jury selection method utilized was fair and impartial under MCR 2.511(A)(4)." *People v Green*, 461 Mich 969 (2000). We now affirm.

I

Our focus on remand is a new computer process for jury selection employed by the Washtenaw Circuit Court and used in defendant's case to select the jury. The clerk of the court utilized a computer to randomly select names from the jury pool and listed those names in numerical order, using the individuals' assigned juror numbers. This list constituted the jury

---

[1] Judge GRIFFIN filed a concurring opinion in which he stated that he agreed with Judge (now Justice) CORRIGAN's dissenting opinion in *People v Colon*, 233 Mich App 295, 308; 591 NW2d 692 (1998), and was following the *Colon* majority only because he was compelled to do so pursuant to MCR 7.215(H)(1).

venire. Rather than place the names in a container for a random blind draw, the clerk then called the first fourteen names on the list. When a prospective juror was excused for cause or by peremptory challenge, the replacement venire person was the next individual on the list in numerical order; a blind draw was not used to select the replacement. Defendant challenged the procedure in the trial court and on appeal, maintaining that the numerical order nullified the randomization of the selection process and allowed for the potential use of a peremptory challenge to place on the jury a known and desired juror.

II

Previously, a trial court's failure to follow the jury selection process established by Michigan's court rules was error requiring reversal. *People v Miller*, 411 Mich 321; 307 NW2d 335 (1981). In *Miller*, our Supreme Court, in a 4-3 decision, held that the "struck jury method"[2] employed by the trial court did not comply with the court rule then in effect, GCR 1963, 511.6,[3] and broadly stated that *any* noncompliance requires automatic reversal:

> Although the defendants' claims of confusion in the jury selection process are not implausible, we agree with the Court of Appeals that there is nothing in this record from which one could affirmatively find prejudice to the defendants from the selection process. However, given the funda-

---

[2] The "struck jury method" entails calling a large number of jurors at once. The prosecution and defense then alternately "strike" jurors until only the requisite number of jurors remain. *Miller, supra* at 323.

[3] GCR 1963, 511.6, in effect when *Miller* was decided, is identical in its operative terms to MCR 2.511(F), which superseded it and still prohibits the use of a "struck jury method."

mental nature of the right to trial by an impartial jury, and the inherent difficulty of evaluating such claims, a requirement that a defendant demonstrate prejudice would impose an often impossible burden. . . . A defendant is entitled to have the jury selected as provided by the rule. *Where, as here, a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal.* The "struck jury method" or any system patterned thereafter is disapproved and may not be used in the future. [*Id.* at 326 (emphasis added).]

Subsequently, on the basis of the holding in *Miller*, a majority of this Court in *Colon, supra* at 303, held that the trial court's deviation from the procedure described in MCR 2.511(F)[4] required reversal despite the absence of actual prejudice:

The jury selection procedure utilized in this case is clearly not the procedure described in and contemplated by MCR 2.511(F). The panel of potential jurors seated and examined was not equal in size to the jury that heard the case, and once a prospective juror was dismissed, a new prospective juror was not selected and examined before further challenges were made. The trial court's procedure examined nineteen prospective jurors at once, and when, after a total of seven challenges were exercised and twelve potential jurors remained, *then* the trial court selected and examined seven new prospective jurors. Although there is no indication that defendant suffered actual prejudice as a result of this procedure, because of the fundamental nature of the right to trial by an impartial jury and the difficulty in examining such claims, prejudice need not be shown.

---

[4] MCR 2.511(F) provides:

Replacement of Challenged Jurors. After the jurors have been seated in the juror's box and a challenge for cause is sustained or a peremptory challenge exercised, another juror must be selected and examined before further challenges are made. This juror is subject to challenge as are other jurors.

*Miller, supra.* Thus, we are compelled to reverse and remand for a new trial. [Emphasis in original.]

In our previous opinion in this matter, we were constrained by court rule (MCR 7.215[H][1]) to follow this Court's prior opinion in *Colon, supra,* and adhere to the sweeping rule of automatic reversal espoused therein, originally derived from *Miller.* However, on remand, we are now instructed by our Supreme Court to reconsider the viability of the Washtenaw Circuit Court's jury selection method in the context of MCR 2.511(A)(4), a court rule neither construed in *Colon* nor in existence when *Miller* was decided. Thus, we consider this issue anew, mindful of, but no longer necessarily bound by, *Colon, supra.*

MCR 2.511(A) governs the selection of jurors and provides in pertinent part:

(2) In an action that is to be tried before a jury, the names or corresponding numbers of the prospective jurors shall be deposited in a container, and the prospective jurors must be selected for examination by a random blind draw from the container.

\*     \*     \*

(4) *Prospective jurors may be selected by any other fair and impartial method directed by the court or agreed to by the parties.*

MCR 2.511(A)(4) is one facet of numerous changes made to the jury selection process when the Michigan Court Rules were extensively revised in 1985. This newly added subsection, by its express language, provides considerable latitude in the method used by courts to select juries as long as the procedure is fair

and impartial. As noted by commentators Dean & Longhofer:

> Once the array of jurors has been formed, the selection process of jurors for a particular action begins. The rule's only restriction on the method used is that it be "fair and impartial." A court may utilize the random draw method set forth in MCR 2.511(A), an alternative method directed by court, or a procedure agreed to by the parties.
>
> MCR 2.511(A) contains significantly less detail on the manner of jury selection than did GCR 1963, 511.1. This change was made to give flexibility to the courts to adopt jury selection procedures that best suit the convenience of the parties and the court. The rule was intended to eliminate artificial technicalities found in the old rule, such as the requirement that the names of the prospective jurors be placed on "slips" and then deposited in a "box." Whatever system is used, however, it must be fair and impartial. [3 Dean & Longhofer, Michigan Court Rules Practice (4th ed), § 2511.2, p 170.]

Thus, although the *Miller* Court's disapproval of the "struck jury method" still remains viable,[5] MCR 2.511(A)(4) obviously affects *Miller's* rule of automatic reversal with respect to deviations from the standard jury selection procedure that do not implicate a "struck jury method" or a defendant's right to exercise peremptory challenges pursuant to MCR 2.511(F). Moreover, in the years following the *Miller* decision, our Supreme Court has distanced itself from the principle of error per se and embraced the notion that "rules of automatic reversal are disfavored." *People v Mosko*, 441 Mich 496, 502; 495 NW2d 534 (1992). See also *People v Graves*, 458 Mich 476, 481; 581 NW2d 229 (1998); *People v Belanger*, 454 Mich 571,

---

[5] See n 3.

575; 563 NW2d 665 (1997); *Colon, supra* at 308-312 (CORRIGAN, C.J., dissenting); MCR 2.613(A); MCR 1.105.

Viewed in the context of these developments, we note as a preliminary matter that the jury selection procedure employed by the Washtenaw Circuit Court does not constitute a "struck jury method" so as to fall within the narrowed proscription of *Miller, supra,* or impede a party's right to exercise peremptory challenges pursuant to MCR 2.511(F). The random assignment of juror numbers and the random selection of the venire from the jury pool by the computer satisfies the requirements of MCR 2.511(A)(2). However, the procedure does deviate from the standard practice used by most trial courts in the method by which excused jurors are replaced—jurors' names once selected are placed in numerical order by their randomly selected juror number and replacements are taken in numerical order, rather than in a random fashion. Thus, even as the trial court recognized, the parties ostensibly need only look to the next number on the list to know which juror will be called next. The procedure employed by the Washtenaw Circuit Court impinges on the element of randomness that is the cornerstone of the jury selection process and is consequently flawed by its predictability.

However, this flaw is not fatal. As the clerk of the circuit court explained, the identity of the next prospective juror is not a certainty under this process. After the preparation of the list, prospective jurors appearing on the list could have their service deferred to a different date or could be excused pursuant to a doctor's note. Any such changes would not be reflected in the list possessed by the attorneys.

Accordingly, the clerk opined that it was possible that the next prospective juror appearing on the list would not be the person who would be replacing any prospective juror excused from service. In other words, several juror numbers could be skipped, depending on whether jurors from the pool have been preexcused from service or have deferred service to the present trial. The prosecutor indicated on the record that he was unable to discern with any specificity the identity of any prospective juror to be called to replace an excused venire person. Under these circumstances, we hold that the imperfect jury selection procedure did not violate the mandate of MCR 2.511(A)(4). The described process provided a "fair and impartial" means of picking a jury and did not deprive defendant of a fair trial. "We require a fair trial, not a perfect trial." *People v Beach*, 429 Mich 450, 491; 418 NW2d 861 (1988). See also *Delaware v Van Arsdall*, 475 US 673, 681; 106 S Ct 1431; 89 L Ed 2d 674 (1986).

Despite our conclusion that the selection procedure was fair and impartial in the instant case, we instruct the Washtenaw Circuit Court not to employ this system in the future. MCR 7.216(A)(7). The element of predictability, however slight, should be eliminated from the selection process to ensure that randomness is preserved and protected to the fullest degree.

Affirmed.