PEOPLE v BELL (ON RECONSIDERATION)

Docket No. 233234. Submitted May 7, 2003, at Detroit. Decided December 9, 2003, at 9:10 A.M. Leave to appeal sought.

Marlon Bell was convicted by a jury in the Wayne Circuit Court, Leonard Townsend, J., on two counts of first-degree felony murder, two counts of armed robbery, and one count of conspiracy to commit armed robbery. During jury selection, the court disallowed the defendant from exercising his statutory right to peremptorily challenge two empaneled jurors. The court, on its own initiative, raised the issue whether the attempted peremptory challenges were racially discriminatory and prohibited by *Kentucky v Batson*, 476 US 79 (1986), and determined that they were. The defendant appealed.

On reconsideration, the Court of Appeals *held*:

1. A trial court, at its discretion, may sua sponte raise a *Batson* issue to protect rights secured by the Equal Protection Clause. The Equal Protection Clause protects not only the rights of the criminally accused, but also the rights of individual jurors not to be excluded from the jury pool on account of their race, and the right of society as a whole to rely upon the integrity of the judicial system.

2. *Batson* set forth a three-step process for determining whether there has been an improper exercise of peremptory challenges: (1) once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination, (2) the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation, and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. In this case, it is not apparent from the trial record whether there was a pattern of discrimination in the exercise of preemptory challenges. Even if there were such a pattern, the trial court failed to comply with steps two and three of the *Batson* process and further erred by placing the burden of persuasion on the defendant.

3. As decided in *People v Miller*, 411 Mich 321 (1981), and *People v Schmitz*, 231 Mich App 521 (1998), the erroneous denial of the right to remove a juror peremptorily amounts to error per se, not

subject to harmless error analysis. Federal case law provides that the denial or impairment of the right of peremptory challenge is error requiring reversal without a showing of prejudice.

Reversed and remanded for a new trial.

ZAHRA, J., concurring, stated that *Miller* and *Schmitz* bind the Court of Appeals to reverse the defendant's convictions. Were it not for those decisions, Judge Zahra would hold that the trial court's error is nonconstitutional and subject to harmless error analysis. The right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial. The Sixth Amendment right to an impartial jury is guaranteed through the removal of jurors for cause. The defendant did not challenge for cause either of the jurors in question, and there is nothing in the trial record that supports the conclusion that the defendant's Sixth Amendment right to a fair and impartial jury was denied. The defendant was not denied due process of law as guaranteed under the Fifth Amendment and the Sixth Amendment inasmuch as he received what state law provides, i.e., the right to remove jurors peremptorily, subject to the equal protection concern identified in *Batson*. To the extent that the statutory right to peremptory challenges is impaired, state law guarantees that a criminal conviction will only be set aside where a miscarriage of justice has resulted. MCL 769.26. Thus, any error infringing upon the statutory right to peremptory challenge is subject to harmless error review. Reversal is warranted only if a defendant establishes under a "more probable than not" standard that a miscarriage of justice occurred. In this case, there is no evidence to establish that the two jurors who were not peremptorily removed from the jury were in any way biased or precluded the defendant from receiving a fair trial. Thus, the trial court's erroneous denial of the defendant's right to peremptorily remove the jurors in question was harmless as a matter of law.

1. CRIMINAL LAW — JURY — PEREMPTORY CHALLENGES — RACIAL DISCRIMINATION — COURTS.

A trial court, at its discretion, may sua sponte raise the issue whether a party is violating the prohibition against peremptory challenges based on racial discrimination.

2. CRIMINAL LAW — JURY — PEREMPTORY CHALLENGES — APPEAL.

The denial or impairment of a criminal defendant's right to remove a particular juror peremptorily is error requiring reversal, even in the absence of a showing of prejudice.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the people.

State Appellate Defender (by *Douglas W. Baker*) for the defendant on appeal.

ON RECONSIDERATION

Before: WILDER, P.J., and FITZGERALD and ZAHRA, JJ.

FITZGERALD, J. Following a jury trial, defendant was convicted on two counts of first-degree felony murder, MCL 750.316; two counts of armed robbery, MCL 750.529; and one count of conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a, arising from the July 29, 1999, robbery and shooting deaths of Chanel Roberts and Amanda Hodges. Defendant was sentenced to concurrent terms of mandatory life imprisonment without parole for each of the felony-murder convictions and life imprisonment for the convictions of armed robbery and conspiracy to commit armed robbery. Defendant appeals as of right.

The most contested issue presented on appeal is whether the trial court's erroneous denial of defendant's statutory right to peremptorily remove two prospective jurors from the jury pool was error per se, not subject to harmless error analysis. We conclude the above described error is error per se that is not subject to harmless error analysis. We reverse and remand for a new trial.

### I. FACTS AND PROCEDURE

During jury selection, defendant's trial counsel attempted to exercise a peremptory challenge to strike potential juror number 10, who was Caucasian. Juror 10 stated during voir dire that three of his friends were high-ranking police officers, but that he "wouldn't think" that this fact would make a difference to him in reaching a verdict of not guilty. When defense counsel attempted to peremptorily excuse this juror, the trial court concluded that defendant's peremptory challenge was based on race and disallowed the challenge.[1]

Later, during voir dire conducted by the trial court, defense counsel sought to strike juror number 5, another Caucasian juror, despite juror 5's statement that he promised to be fair to both sides. This prompted the prosecutor to object, claiming that defendant was attempting to strike juror 5 on the basis of his race, contrary to *Kentucky v Batson*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). The trial court "disallow[ed] the challenge, for the same reasons as asserted before." Consequently, juror 5 and juror 10 sat on the jury that convicted defendant, notwithstanding defense counsel's attempts to remove these jurors peremptorily. Defendant was convicted on two counts of first-degree felony murder, two counts of armed robbery, and one count of conspiracy to commit armed robbery.[2]

---

[1] Defendant is African-American, and the two victims were Caucasian.

[2] At the close of the prosecution's case, the trial court granted defendant's motion for a directed verdict of acquittal on the charges of first-degree premeditated murder, MCL 750.316, and conspiracy to commit first-degree premeditated murder, MCL 750.316 and MCL 750.157a, but denied the motion with respect to the remaining charges.

II. ANALYSIS

Defendant argues that the trial court committed error requiring reversal by sua sponte raising *Batson* to question defendant's motives for exercising his peremptory challenge to juror 10. Defendant also argues the trial court committed error requiring reversal when it denied defendant his statutory right to peremptorily remove juror 5 and juror 10. Each of these issues is addressed separately.

### A. A TRIAL COURT CAN SUA SPONTE IMPLEMENT THE *BATSON* PROCESS

Although *Batson* does not explicitly address whether a trial court may sua sponte question whether a litigant is removing jurors for an improper purpose, it is clear from the reasoning of *Batson* and its progeny that the United States Supreme Court recognizes a trial court's authority to unilaterally raise such an issue to ensure the integrity of the judicial process. Specifically, *Batson*, *supra* at 87-88, recognized that the Equal Protection Clause protects not only the rights of the criminally accused, but also the rights of individual jurors not to be excluded from the jury pool on account of their race, and the right of society as a whole to rely upon the integrity of the judicial system. In subsequent decisions, the Supreme Court has forcefully reiterated these points. See *Edmonson v Leesville Concrete Co, Inc*, 500 US 614, 624; 111 S Ct 2077; 114 L Ed 2d 660 (1991), on remand 943 F2d 551 (CA 5, 1991) ("By enforcing a discriminatory peremptory challenge, the court has not only made itself a party to the biased act, but has elected to place its power, property and prestige behind the

alleged discrimination." [internal quotation marks and brackets omitted]); *Georgia v McCollum*, 505 US 42, 49-50; 112 S Ct 2348; 120 L Ed 2d 33 (1992), on remand 262 Ga 554; 422 SE2d 866 (1992) ("Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice— our citizens' confidence in it." [internal quotation marks and brackets omitted].).

Virtually all state courts addressing whether a trial court may sua sponte raise a *Batson* issue have concluded that, subject to the Equal Protection Clause, it is within the discretion of the trial court to conduct a *Batson* hearing, even absent an objection. See *State v Evans*, 100 Wash App 757, 767; 998 P2d 373 (2000) (a trial judge has the discretion to raise a *Batson* issue sua sponte to protect the rights secured by the Equal Protection Clause); *Commonwealth v Carson*, 559 Pa 460, 477; 741 A2d 686 (1999) (to allow the trial court to sua sponte raise the issue of a discriminatory peremptory challenge would be consistent with *Batson*, because "dictum appearing in *Batson* and its progeny suggests the existence of an affirmative trial court duty to prevent the discriminatory use of peremptory challenges");[3] *Brogden v State*, 102 Md App 423, 649 A2d 1196 (1994) (a trial court may exercise its discretion in raising *Batson* sua sponte, since "[a] trial judge need not sit idly by when he or she observes

---

[3] Despite the Pennsylvania Supreme Court's statements regarding the trial court's sua sponte raising of the *Batson* issue, the court in *Carson, supra* at 478, declined "to step into the morass of 'peremptory challenge jurisprudence,'" and disposed of the case by concluding that any error in the trial court's sua sponte raising of *Batson* did not prejudice the defendant.

what he [or she] perceives to be racial discrimination in the exercise of peremptory challenges"); *Lemley v State*, 599 So 2d 64, 69 (Ala Crim App, 1992) (the trial judge, as the presiding officer of the court, was authorized to conduct a *Batson* hearing absent an objection to ensure that discrimination did not mar the proceedings in his courtroom). The weight of authority and the persuasiveness of the reasoning clearly support the position that a trial court may sua sponte raise a *Batson* issue.

Defendant argues that *Clarke v Kmart Corp*, 220 Mich App 381, 382-384; 559 NW2d 377 (1996), holds that it is error for a trial court to raise a *Batson* issue "on its own initiative." A review of the Court's analysis, however, does not support defendant's contention. *Clarke* merely references that the trial court raised the issue on its own initiative. *Clarke* does not definitively hold that the trial court's raising of the issue sua sponte was improper. Rather, *Clarke* is premised upon the conclusion that the plaintiff did not establish a prima facie showing of discrimination.

### B. THE TRIAL COURT COMMITTED ERROR REQUIRING REVERSAL WHEN IT DENIED DEFENDANT HIS STATUTORY RIGHT TO PEREMPTORILY REMOVE JURORS

Defendant also argues that the court committed error requiring reversal by denying him his right to peremptorily remove juror 5 and juror 10. Defendant acknowledges that the right to remove jurors peremptorily is restricted by *Batson*. However, defendant maintains that the trial court failed to follow the three-step process mandated by *Batson*.

In *Batson, supra* at 89, 96-98, the Supreme Court made clear that a prosecutor may not exercise per-

emptory challenges to strike jurors solely on the basis of their race and set forth a three-step process for determining whether there has been an improper exercise of peremptory challenges in criminal or civil proceedings.[4] The United States Supreme Court has reaffirmed *Batson's* three-step process for determining whether there has been an improper exercise of peremptory challenges in criminal or civil proceedings. See, e.g., *Miller-El v Cockrell*, 537 US 322; 123 S Ct 1029; 154 L Ed 2d 931 (2003), on remand 330 F3d 690 (CA 5, 2003); *McCollum, supra*. Under *Batson, supra* at 96-98, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination (step three). *Id.*; *Hernandez v New York*, 500 US 352, 358-359; 111 S Ct 1859; 114 L Ed 2d 395 (1991).

Defendant maintains that the first step of *Batson* was not satisfied because there was not a prima facie showing of discrimination based on race. We agree. To establish a prima facie case of discrimination based on race, the opponent of the challenge must (1) show that members of a cognizable racial group are

---

[4] Although the Court declined in *Batson* to express a view "on whether the Constitution imposes any limit on the exercise of peremptory challenges by defense counsel," *id.* at 89 n 12, later cases have held that under the Equal Protection Clause, a defendant may not exercise a peremptory challenge to remove potential jurors solely on the basis of the juror's gender, ethnic origin, or race. See, e.g., *United States v Martinez-Salazar*, 528 US 304, 315; 120 S Ct 774; 145 L Ed 2d 792 (2000), on remand 278 F3d 1357 (CA 9, 2002).

being peremptorily removed from the jury pool and (2) articulate facts to establish an inference that the right to remove jurors peremptorily is being used to exclude one or more potential jurors from the jury on the basis of race. *Batson, supra* at 96. It is not apparent from the trial record in this case whether there was a pattern of discrimination evinced by defense counsel's exercise of peremptory challenges that would give rise to an inference that prospective Caucasian jurors were being excluded on account of race. The trial court record simply does not reveal the racial identities of the prospective jurors.[5] Thus, we are unable to determine whether a prima facie case of discrimination was established.

Even assuming that a prima facie case of discrimination was established, the trial court also failed to comply with steps two and three of the *Batson* process. The court did not give defense counsel an opportunity to state race-neutral reasons for his peremptory challenge before disallowing the peremptory challenge.[6] Rather, the court collapsed all three steps into one, ruling without a hearing that the juror had to be seated because "racism is being used in jury selection." This was error. See *Purkett v Elem*, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995), on remand 64 F3d 1195 (CA 8, 1995) (deciding that the

---

[5] While the prosecution claims on appeal that there was a pattern of discrimination because "[o]f seven defense peremptory challenges made, five were against white males," we cannot find support for the conclusion that defendant's counsel was acting with a discriminatory motive because the trial court did not make a record of the racial identities of the members of the jury pool.

[6] The court did not allow defense counsel to make a record until after the court had ruled that it was denying defendant's attempts to remove the jurors in question.

court erred by combining *Batson*'s second and third
steps into one step). The trial court further erred by
placing the burden of persuasion on defendant, the
proponent of the strike. While "the burden of produc-
tion shifts to the proponent of the strike to come for-
ward with a race-neutral explanation," *United States
v McFerron*, 163 F3d 952, 954 (CA 6, 1998), the bur-
den of persuasion never shifts to the party exercising
the challenge. *Id.* at 955. Accordingly, we conclude
that the trial court erred when it disallowed defen-
dant's peremptory challenge of juror 10 without
proper implementation of the three-step *Batson*
process.

The trial court also failed to follow the *Batson* pro-
cess when denying defense counsel's peremptory
challenge to juror 5. The prosecutor objected to
defendant's proposed strike of juror 5. The trial court
denied the challenge "for the same reasons as
asserted before." The trial court failed to inquire
whether there was a prima facie showing of discrimi-
nation and whether defense counsel had a race-neu-
tral explanation for striking this prospective juror.[7] In
short, the trial court simply failed to apply *Batson* as
mandated by the United States Supreme Court.
Because the trial court failed to follow the *Batson*
process, it also erred in disallowing defendant's per-
emptory challenge to juror 5.

---

[7] It was only after the trial court disallowed defendant's peremptory
challenge of juror 5 that the prosecutor explained that she objected to the
strike because, unlike prior peremptory challenges exercised by the
defense, there was no basis for defense counsel to challenge juror 5. Even
if we assume that the prosecutor's explanation established a prima facie
case of discrimination, defense counsel was never given an opportunity to
provide a race-neutral explanation for his strike. Instead, the trial court
decided to "stand on the record" in leaving juror 5 on the jury.

Having concluded that the trial court erred in failing to adhere strictly to the three-step *Batson* process, we must next consider whether this error supports reversal of defendant's convictions. Preliminarily we note that there are two types of errors affecting the statutory right to remove jurors peremptorily. One type of error may be referred to as a dilution of the peremptory challenge right. This type of error typically occurs when the trial court erroneously modifies the jury selection process such that a litigant is denied the full array of peremptory challenges afforded by statute or court rule. The other type of error may be referred to as a denial of the right to remove a particular juror peremptorily. Under this scenario, the aggrieved litigant is afforded the full array of peremptory challenges provided by law. However, the litigant attempting to exercise a peremptory challenge is not permitted to remove the challenged juror. Thus, the challenged juror will sit in judgment of the challenging litigant's claims.[8] This case involves the wrongful denial of the right to remove a particular juror peremptorily.[9]

---

[8] In order to preserve a claim of error arising from the dilution of the right to remove jurors peremptorily, the aggrieved litigant must exhaust all peremptory challenges afforded to the litigant in the jury selection process. One ought not be heard to complain of the dilution of the peremptory challenge right where it is evident from the facts of the case that the litigant would not have used the full array of challenges had they been available. However, a person alleging a wrongful denial of the right to exercise a peremptory challenge need not exhaust all peremptory challenges in order to preserve the issue, because the challenged juror will remain on the jury regardless of whether the litigant utilizes all remaining peremptory challenges. *People v Schmitz*, 231 Mich App 521, 527; 586 NW2d 766 (1998).

[9] Generally speaking, the erroneous denial of the right to remove a specific juror peremptorily may fairly be characterized as a greater infringement on the statutory peremptory challenge right than is a dilution of that right. When a wrongful denial occurs, a juror declared undesirable for jury

In *People v Miller*, 411 Mich 321; 307 NW2d 335 (1981), our Supreme Court addressed a challenge to the "struck jury method" of jury selection. Under this method of jury selection, the court would sit as many as eighty prospective jurors in the jury pool and require the litigants to review the entire jury pool for cause and for peremptory challenges. *Id.* at 323. Thereafter, the jury is selected in order of seating. *Id.* In *Miller, supra* at 324-325, this Court observed that this method of jury selection was inconsistent with the requirements of the then existing court rule on jury selection and amounted to a dilution of the right to exercise peremptory challenges. Nonetheless, this Court affirmed defendant's conviction in light of the overwhelming evidence of defendant's guilt. *Id.* The Supreme Court reversed this Court and granted the defendant a new trial. *Id.* at 326. The Supreme Court acknowledged that there was nothing in the trial court record that would support the conclusion the defendant was prejudiced by the jury selection method under review. *Id.* Nonetheless, the Supreme Court rejected the harmless error approach embraced by this Court, concluding: "given the fundamental nature of the right to trial by an impartial jury, and the inherent difficulty of evaluating such claims, a requirement that a defendant demonstrate prejudice would impose an often impossible burden." *Id.*

---

service by a litigant is nonetheless placed on the jury over that litigant's objection. By contrast, the dilution of the statutory peremptory challenge right, while significant, usually results in a litigant being forced to select a jury with fewer peremptory challenges than the litigant is actually entitled to exercise under the law. While a litigant subjected to a dilution of the peremptory challenge right may not draw the jury the litigant would have drawn if permitted to utilize the full array of peremptory challenges afforded by law, that litigant will rarely be required to accept a juror after the litigant declares the juror undesirable for jury service.

More than twenty-five years later, in *People v Schmitz*, 231 Mich App 521, 531-532; 586 NW2d 766 (1998), this Court addressed whether the erroneous denial of the right to remove a juror peremptorily amounted to error per se, not subject to harmless error analysis.[10] Relying on *Miller*, this Court reluctantly set aside the defendant's conviction. *Schmitz, supra* at 531-532. The *Schmitz* panel concluded that, pursuant to *Miller*, the wrongful denial of the right to remove a particular juror peremptorily amounts to error per se, not subject to harmless error analysis. *Schmitz, supra* at 531-532.

While this Court has subsequently questioned the *Miller* Court's conclusion that the dilution of the right of peremptory challenge is error per se, see *People v Green (On Remand)*, 241 Mich App 40, 46; 613 NW2d 744 (2000) (GRIFFIN J., noting that in the years following *Miller* our Supreme Court has "distanced itself from the principle of error per se and embraced the notion that 'rules of automatic reversal are disfavored.'" [citation omitted].), we are unaware of any Michigan Supreme Court case that has overruled or otherwise expressly modified the conclusion in *Miller*.[11] In fact, as observed by Judge GRIFFIN in *Green, supra* at 46, *Miller* "still remains viable [law.]"

---

[10] In *Schmitz, supra* at 525, the trial court erroneously concluded, contrary to the express language of MCR 2.511(F), that the defendant could not peremptorily challenge a juror that the defendant had previously declined to remove peremptorily earlier in the selection process.

[11] In *Green, supra* at 42, this Court originally concluded that that it was duty-bound by MCR 7.215(H)(1), now 7.215(J)(1), to follow *People v Colon*, 233 Mich App 295; 591 NW2d 692 (1998). *Colon* relied on *Miller* to conclude that a deviation in the jury selection process provided in MCR 2.511(F) required reversal even in the absence of actual prejudice. The Supreme Court vacated this Court's original opinion in *Green*, and remanded for consideration "of whether the jury selection method utilized

Moreover, the United States Supreme Court long ago observed that "[t]he denial or impairment of the right [of peremptory challenge] is reversible error without a showing of prejudice." *Swain v Alabama,* 380 US 202, 219; 85 S Ct 824; 13 L Ed 2d 759 (1965), overruled on other grounds by *Batson,* 476 US at 92-93.[12] Additionally, the great weight of federal authority addressing this issue suggests that errors relating to the right to remove jurors peremptorily are not subject to harmless error analysis. See, e.g., *United States v Gibbs,* 182 F3d 408, 435 (CA 6, 1999) (denial of right to peremptory challenge "amounts to reversible error, there is no requirement of a showing of prejudice" [citation omitted]); *United States v Hall,* 152 F3d 381, 408 (CA 5, 1998), abrogated on other grounds by *United States v Martinez-Salazar,* 528 US 304; 120 S Ct 774; 145 L Ed 2d 792 (2000)[13] (noting circuits that hold that harmless error does not apply to denial or impairment of right to exercise peremptory challenges); *Tankleff v Senkowski,* 135 F3d 235, 248 (CA 2, 1998) (holding that harmless error analysis is

---

was fair and impartial under MCR 2.511(A)(4)." *People v Green,* 461 Mich 975 (2000). On remand, this Court observed that the jury selection court rule at issue in *Miller* was different from the jury selection court rule at issue in *Green. Green, supra* at 47. This Court further concluded that the jury selection process at issue in *Green* was indeed fair and impartial and thus complied with MCR 2.511(F). *Green, supra* at 47-48. Thus, while the Supreme Court's remand order in *Green* adds fuel to the debate whether *Miller* remains viable law, the remand order does not vacate, modify, or otherwise change the rule of law established in *Miller.*

[12] Although *Batson* reversed parts of *Swain, Batson* never addressed this issue. For that reason, *Batson* left intact that portion of *Swain* that set forth the remedial rule for such errors.

[13] *Martinez-Salazar* abrogated the holding in *Hall* that a defendant's rights under a rule governing entitlement to peremptory strikes were not diluted when the defendant exercised a peremptory challenge to remove a potential juror after the trial court erroneously refused to dismiss the potential juror for cause.

inappropriate for *Batson* errors); *United States v Annigoni*, 96 F3d 1132, 1141 (CA 9, 1996) (declining to adopt a harmless error standard for the erroneous deprivation of the right to peremptory challenge); *Ford v Norris*, 67 F3d 162, 170 (CA 8, 1995) (holding that *Batson* error is not amenable to harmless error review); cf. *Kirk v Raymark Industries, Inc*, 61 F3d 147, 159 (CA 3, 1995) (holding that remedy for impairment or denial of right to peremptory challenges is reversal).

We therefore conclude that the trial court's wrongful disallowance of the exercise of peremptory challenges to remove juror 5 and juror 10 was error requiring reversal, even in the absence of a showing of prejudice. Defendant's convictions are vacated.[14]

Reversed and remanded for a new trial. We do not retain jurisdiction.

WILDER, P.J., and ZAHRA, J., concurred.

ZAHRA, J. (*concurring*). I concur in the reversal of defendant's convictions because we are required to do so pursuant to *People v Miller*, 411 Mich 321, 326; 307 NW2d 335 (1981), and *People v Schmitz*, 231 Mich App 521, 531-532; 586 NW2d 766 (1998).[1] I write separately because I have serious concerns regarding the continued viability of *Miller, supra*. Since *Miller* was decided in 1981, our Supreme Court has set forth very

---

[14] In light of our disposition above, we need not address defendant's other arguments on appeal.

[1] The Michigan Court of Appeals is bound by Michigan Supreme Court case law until the Supreme Court overrules or expressly modifies that case law. *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993). Further, under MCR 7.215(J)(1), this Court must follow the rule of law established in *Schmitz*. *Dunn v Detroit Automobile Inter-Ins Exch*, 254 Mich App 256, 260-261; 657 NW2d 153 (2002).

specific criteria that must be established before error may be deemed reversible per se. *People v Cornell*, 466 Mich 335, 363; 646 NW2d 127 (2002); *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999); *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). When error occurs in the trial court, a reviewing court must determine whether the error was constitutional or nonconstitutional. *Cornell, supra* at 363. If the error is constitutional, the reviewing court must determine whether the error is structural or nonstructural. *Id.* If the error is nonconstitutional or, if constitutional, it is nonstructural, then the error is subject to harmless error analysis. *Carines, supra* at 774. Applying the above-described error review process, I conclude that the error in this case is nonconstitutional and, therefore, must be subjected to harmless error analysis. I therefore urge the Supreme Court to address whether *Miller* should be expressly overruled and whether the wrongful denial of the right to remove a particular juror peremptorily amounts to structural error that is not subject to harmless error analysis.[2]

---

[2] Preliminarily, it is worth noting that courts from other jurisdictions that have faced this issue have often elected to remand the case for a proper application of the *Batson* three-step process. See *Edmonds v State*, 372 Md 314, 340-341; 812 A2d 1034 (2002); *State v Donaghy*, 171 Vt 435, 442; 769 A2d 10 (2000); *McKenzie v State*, 223 Ga App 108, 114; 476 SE2d 868 (1996); *State v Pharris*, 846 P2d 454, 465 (Utah App, 1993). Remand is a desirable course of action because great deference must be given to the trial court's credibility findings in assessing the reasons proffered in support of peremptory challenges. *People v Rice*, 468 Mich 919-920 (2003); *People v Knight*, 468 Mich 920 (2003). If, after proper application of the three-pronged *Batson* process, the court determines on remand that the defendant's exercise of peremptory challenges violated *Batson*, there would be no error resulting from the denial of the right to remove the challenged juror peremptorily. Remand is not a viable option in this case because it does not appear likely that the glaring deficiencies in the record can be cured on remand.

I. DEFENDANT WAS NOT DENIED A CONSTITUTIONAL RIGHT

The United States Supreme Court has repeatedly held that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial. See *Frazier v United States*, 335 US 497, 505 n 11; 69 S Ct 201; 93 L Ed 187 (1948); *United States v Wood*, 299 US 123, 145; 57 S Ct 177; 81 L Ed 78 (1936); *Stilson v United States*, 250 US 583, 586; 40 S Ct 28; 63 L Ed 1154 (1919); see also *Swain v Alabama*, 380 US 202, 219; 85 S Ct 824; 13 L Ed 2d 759 (1965). The United States Supreme Court further held in *Ross v Oklahoma*, 487 US 81, 88; 108 S Ct 2273; 101 L Ed 2d 80 (1988), that the loss of a peremptory challenge does not constitute "a violation of the constitutional right to an impartial jury," because peremptory challenges are only "a means to achieve the end of an impartial jury."

Defendant was not denied his Sixth Amendment right to an impartial jury; an impartial jury is guaranteed through the removal of jurors for cause. So long as the trial court conducts an extensive and thorough voir dire and provides trial counsel a full and fair opportunity to explore and disclose whether any member of the proposed jury panel harbors bias that would disqualify that person from sitting on the jury, a defendant's Sixth Amendment right to a fair and impartial jury is protected. Where the impartiality of a juror is not established, the juror must be removed. Here, however, defendant did not challenge for cause either of the jurors in question. Thus, there is nothing in the trial court record that supports the conclusion

that defendant's Sixth Amendment right to a fair and impartial jury was denied.

Likewise, defendant was not denied due process of law as guaranteed under the Fifth Amendment and the Fourteenth Amendment. Due process is afforded when a litigant receives that which state law provides. *Ross, supra* at 89. State law provides for the free exercise of peremptory challenges. However, the statutory right to remove jurors peremptorily is subject to the equal protection concerns defined in *Kentucky v Batson*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), and its progeny.[3] Significantly, state law also provides a standard for reviewing procedural errors in criminal cases. The Michigan Legislature, which granted defendant the right to peremptory challenges, has also stated that a criminal conviction ought not be set aside for a procedural error except where, "after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL

---

[3] The only constitutional limitation on the statutory right of a peremptory challenge is the prohibition against exercising peremptory challenges on the basis of gender, ethnic origin, or race, which is violative of the Equal Protection Clause. *United States v Martinez-Salazar*, 528 US 304, 315; 120 S Ct 774; 145 L Ed 2d 792 (2000) citing *JEB v Alabama ex rel TB*, 511 US 127; 114 S Ct 1419; 128 L Ed 2d 89 (1994), on remand 641 So 2d 821 (Ala Civ App, 1994) (gender); *Hernandez v New York*, 500 US 352; 111 S Ct 1859; 114 L Ed 2d 395 (1991) (ethnic origin); and *Batson, supra* (race). However, in the present case, defendant claims he never exercised his peremptory challenges in an unconstitutional manner. Rather, defendant claims he was denied his right to the actual use of his peremptory challenges. Thus, this case does not turn on the equal protection concerns of *Batson*. Instead, the question presented is whether the erroneous denial of the right to remove specific jurors peremptorily "for any reason, not just an incorrect application of *Batson*—results in a violation of federal constitutional . . . law." *Haywood v Portuando*, 2003 US Dist LEXIS 4190, * 37 (SD NY, March 21, 2003).

769.26.[4] The statutory provision granting peremptory challenges must be read in context with the statutory directive on procedural error in a criminal case. It is apparent that, to the extent that the statutory right to peremptory challenges is impaired, state law guarantees that a criminal conviction will only be set aside where the error results in a miscarriage of justice.[5] Thus, because state law dictates that a harmless error analysis must apply to procedural errors, such as errors involving peremptory challenges, the erroneous denial of the statutory right to remove a particular juror peremptorily, without more, cannot be a violation of the constitutional guarantee of due process of law.[6]

## II. NONCONSTITUTIONAL ERROR IS SUBJECT TO HARMLESS ERROR ANALYSIS

The error in this case is, in my opinion, nonconstitutional error that is subject to harmless error analy-

---

[4] Interestingly, this Court in *Schmitz, supra* at 531, recognized that the Legislature mandated a harmless error approach to setting aside criminal convictions on the basis of procedural error in the trial court. Nonetheless the *Schmitz* panel ignored this legislative mandate, apparently because it concluded it would be difficult to establish prejudice relating to errors in the peremptory challenge process. *Id.*

[5] Our Supreme Court has interpreted the statutory phrase "miscarriage of justice" to require reversal of a criminal conviction only where " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity, supra* at 495-496, quoting MCL 769.26.

[6] While I agree with the observation made in the majority opinion that the erroneous denial of the right to remove a particular juror peremptorily is a greater infringement on the statutory right of peremptory challenge than is a dilution of that right, I do not conclude that this distinction converts a statutory right into a constitutional right. Not all important rights are constitutionally guaranteed. Likewise, not all violations of important rights rise to constitutional violations.

sis.[7] My conclusion is not altered by the United States Supreme Court's archaic dicta in *Swain v Alabama*, 380 US 202, 219; 85 S Ct 824; 13 L Ed 2d 759 (1965), overruled in part by *Batson, supra*, that the denial or impairment of the statutory right to peremptorily strike jurors constitutes error not subject to harmless error analysis. Significantly, the United State Supreme Court has recently retreated from *Swain*. In *United States v Martinez-Salazar*, 528 US 304, 317 n 4; 120 S Ct 774; 145 L Ed 2d 792 (2000), on remand 278 F3d 1357 (CA 9, 2002), the Supreme Court noted that "the oft-quoted language in *Swain* was not only unnecessary to the decision in that case . . . but was founded on a series of our earlier cases decided long before the adoption of harmless-error review."[8]

The Supreme Court's observations in *Martinez-Salazar* caused the United States Court of Appeals for the Seventh Circuit to reject the automatic reversal rule involving claims of error arising from the dilution of the right to peremptorily challenge jurors. *United States v Patterson*, 215 F3d 776, 781 (CA 7, 2000), vacated in part on other grounds 531 US 1033; 121 S Ct 621; 148 L Ed 2d 531 (2000), on remand 241 F3d 912 (CA 7, 2001) (stating "*Martinez-Salazar* . . . pulls the plug on the *Swain* dictum and requires us to address the harmless-error question as an original

---

[7] Defendant properly preserved this issue for appellate review. Pursuant to *Carines, supra* at 774, defendant carries the burden of establishing that the preserved nonconstitutional error resulted in a miscarriage of justice under a "more probable than not" standard.

[8] I am also not troubled that, as observed in the majority opinion, the great weight of federal authority supports the conclusion that errors affecting the right to peremptory challenge are not subject to harmless error analysis. None of the federal cases cited in the majority opinion discuss whether the Supreme Court's retreat from *Swain* supports a departure from the error per se rule.

matter"). Unrestrained by the dicta of *Swain*, the United States Court of Appeals for the Seventh Circuit rejected the traditional view that errors concerning peremptory challenges always affect a substantial right, and instead applied a harmless error analysis:

> A right is "substantial" when it is one of the pillars of a fair trial. Trial before an orangutan, or the grant of summary judgment against the accused in a criminal case, would deprive the defendant of a "substantial" right even if it were certain that a jury would convict. For the same reason, a biased tribunal always deprives the accused of a substantial right. Deprivation of counsel likewise so undermines the ability to distinguish the guilty from the innocent that it always leads to reversal. But "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v Clark*, 478 US 570, 579; 92 L Ed 2d 460; 106 S Ct 3101 (1986). It is impossible to group an error concerning peremptory challenges with the denial of counsel or trial before a bribed judge. When the jury that actually sits is impartial, as this one was, the defendant has enjoyed the *substantial* right. Peremptory challenges enable the defendants to feel more comfortable with the jury that is to determine their fate, but increasing a litigants' comfort level is only one goal among many, and reduced peace of mind is a bad reason to retry complex cases decided by impartial juries. [*Patterson, supra* at 781-782 (citations omitted; emphasis in original).][9]

---

[9] After *Patterson*, the United States Court of Appeals for the Seventh Circuit found structural error arising from the improvident use of a peremptory challenge by the prosecution. *United States v Harbin*, 250 F3d 532 (CA 7, 2001). *Harbin* is factually distinguishable from the present case. In *Harbin, supra* at 547, "[t]he government used that peremptory challenge, presumably for the purpose of obtaining a jury more favorable to the prosecution, on the sixth day of an eight-day trial, at which point [the prosecution] would have had significant opportunity to observe the demeanor of the juror, and to assess whether the alternate juror would be more favorable to its case." The *Harbin* court concluded that defendant was denied a fair and impartial jury because the prosecution manipulated

Before *Martinez-Salazar*, the District of Columbia Court of Appeals initially followed the *Swain* dicta and assumed that a defendant's right to peremptory challenge was so fundamental that any infringement of that right resulted in reversal as a matter of law without the need to show actual bias. E.g., *Wells v United States*, 515 A2d 1108, 1111 (DC App, 1986), overruled by *Lyons v United States*, 683 A2d 1066 (DC App, 1996) (en banc). But in *Lyons v United States*, 683 A2d 1066 (DC App, 1996) (en banc), the court reconsidered this issue after the Supreme Court's decision in *Arizona v Fulminante*, 499 US 279, 310; 111 S Ct 1246; 113 L Ed 2d 302 (1991), which distinguished trial errors from structural errors and concluded that only structural errors may never be deemed harmless. In *Lyons, supra* at 1071, the District of Columbia Court of Appeals rejected the automatic reversal rule and instead adopted a harmless error standard of review for errors alleging a dilution of the right to peremptorily challenge jurors. In concluding that a harmless error analysis applies, the court reasoned:

> Critical to the [Supreme] Court's distinction between these two types of errors is that the category of "structural defect" discussed in *Fulminante* is limited to fundamental constitutional errors. The Court repeatedly referred to those defects it deemed "structural" as "constitutional

---

the jury mid-trial to favor the prosecution. *Id.* The *Harbin* court also concluded defendant was denied due process because the prosecution was afforded a procedure that was not made available to the defense. *Id.* at 547-548. Thus, the *Harbin* court found structural error. *Id.* Because *Harbin* involved the manipulation of the jury by a litigant in the middle of trial, it may fairly be categorized as belonging to the limited class of cases involving the infringement of a substantial right. See *Patterson, supra* at 781-782.

errors," "constitutional deprivations," or "constitutional violations." Subsequent decisions have made clear that *Fulminante*'s discussion of "structural defects" applied only to certain constitutional errors that were too fundamental to be harmless. . . .

Since it has been settled for decades that the right of peremptory challenge is not a constitutional right at all, let alone a "basic" or "fundamental" constitutional right, it follows from *Fulminante* that any error relating to the use of peremptory challenges cannot be regarded as a "structural defect." [*Lyons, supra* at 1071 (citations omitted).]

In sum, recent directives from the United States Supreme Court support the conclusion that any error infringing upon the statutory right to peremptory challenge is subject to harmless error review.[10] Having

---

[10] Neither the Michigan Supreme Court nor the United States Supreme Court has found structural error from error that is not of constitutional dimension. Furthermore, errors that require automatic reversal, i.e., "structural errors" have only been applied to certain constitutional errors in a "limited class" of cases. *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000), quoting *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), on remand 197 F3d 1122 (CA 11, 1999). The Court in *Neder* stated several examples of structural error:

"Indeed, we have found an error to be 'structural' and thus subject to automatic reversal, only in a 'very limited class of cases.' *Johnson v United States*, 520 US 461, 468; 117 S Ct 1544; 137 L Ed 2d 718 (1997) (citing *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963) (complete denial of counsel); *Tumey v Ohio*, 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927) (biased trial judge); *Vasquez v Hillery*, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v Wiggins*, 465 US 168; 104 S Ct 944; 79 L Ed 2d 122 (1984) (denial of self-representation at trial); *Waller v Georgia*, 467 US 39; 104 S Ct 2210; 81 L Ed 2d 31 (1984) (denial of public trial); *Sullivan v Louisiana*, 508 US 275; 113 S Ct 2078; 124 L Ed 2d 182 (1993) (defective reasonable-doubt instruction)." [*Duncan, supra* at 52, quoting *Neder, supra* at 8.]

The dilution or denial of the right to peremptory challenge has yet to fall under the "limited class of constitutional errors [that] are structural and subject to automatic reversal." *Duncan, supra* at 51, citing *Neder, supra* at 8.

determined that this case presents a preserved non-constitutional error subject to harmless error analysis, reversal is warranted only if defendant establishes under a "more probable than not" standard that a miscarriage of justice occurred. *Lukity, supra* at 495. Defendant carries the burden of demonstrating that it is "more probable than not that the outcome would have been different without this error." *Lukity, supra* at 497. However, defendant produces no evidence that the two jurors who were not peremptorily removed from the jury at defendant's request were in any way biased or precluded him from receiving a fair trial. Defendant never attempted to challenge these jurors for cause, which he could have done had he thought that these jurors exhibited bias or a state of mind that would prevent the jurors from rendering a just verdict. MCR 2.511(D). Defendant has made no claim that the jury that sat was biased in any way, or that answers given in voir dire by these two jurors prohibited him from having a fair trial or impartial jury. Rather, the crux of defendant's argument is that he was denied peace of mind that the jurors selected would not only be impartial, but also favorably disposed to his defense. However, as observed by the Seventh Circuit Court of Appeals, "reduced peace of mind is a bad reason to retry complex cases decided by impartial juries." *Patterson, supra* at 782. Consequently, because there is no evidence to establish that the denial of defendant's right to remove the jurors in question affected the verdict, I would conclude that the trial court's erroneous denial of defendant's right to peremptorily remove the jurors in question was harmless as a matter of law. However, I am duty-bound to follow the Michigan Supreme Court opinion

in *Miller* and this Court's opinion in *Schmitz*, which reluctantly relied on *Miller.* I urge the Supreme Court to grant any application for leave filed in this case, and address this very significant question of law.

Wilder, J., concurred.