*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 26, 2023

Plaintiff-Appellee,

v

No. 357898
Berrien Circuit Court
LC No. 2020-002934-FH

LAMONT RASHEED NUMAN,

Defendant-Appellant.

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant, Lamont Rasheed Numan, appeals by right his convictions of unarmed robbery, MCL 750.530; assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; unlawful imprisonment, MCL 750.349b; third-offense domestic violence (DV-3), MCL 750.81(5); interference with an electronic communication device, MCL 750.540(5)(b); and malicious destruction of personal property under $200, MCL 750.377a(1)(d). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 90 months to 15 years for unarmed robbery and unlawful imprisonment, 90 months to 10 years for AWIGBH, 24 months to 4 years for DV-3 and interference with an electronic communication device, and 93 days in jail for malicious destruction of personal property under $200.

On appeal, defendant argues that the trial court erred when it allowed a biased juror to remain on the panel or, alternatively, that defense counsel provided ineffective assistance by not challenging the juror for cause. Defendant further argues that the trial court improperly allowed evidence of prior convictions for domestic violence. Finally, defendant argues that a $200 fine imposed by the trial court for the unarmed-robbery conviction was not authorized by statute and must be vacated. We affirm defendant's convictions but vacate the fine and remand the case to the trial court accordingly.

## I. FACTS

This case stems from an incident in which defendant assaulted his girlfriend, VL, as she came home to her apartment after shopping with a male friend. VL indicated that defendant became progressively angrier the longer she was out shopping. VL testified that after her friend

dropped her off and VL headed inside, defendant appeared from behind a tree, pushed his way in behind her, then proceeded to slap her and hit her head against a wall multiple times. VL also testified that the arguing continued because defendant accused her of having a relationship with the friend with whom VL was shopping. Defendant punched VL in her right eye, and he took her cell phone from her hand and broke it. Defendant also pulled VL's purse off her and took money and marijuana out of it. VL stated that the assault lasted two hours and that she yelled and attempted to exit the door multiple times. VL suffered broken bones under her right eye, a broken blood vessel in her right eye, and head injuries. The assault rendered VL blind in her right eye.

At trial, a 14-member jury was seated after 20 potential panelists were excused for cause or through peremptory challenges. The trial court believed that only one juror from the panel remained uncalled when the final panel was selected. At trial, during the presentation of proofs, the court admitted certified records of defendant's 2012 and 2019 domestic-violence convictions over his objections. VL also testified regarding other incidents of violence by the defendant against her. The jury found defendant guilty as charged.

The trial court sentenced defendant as noted above. The trial court also imposed a fine of $200 on only one count, unarmed robbery, as well as court costs and fees. The prosecution did not seek restitution. Defendant appealed as of right to this Court.

## II. JUROR BIAS

Defendant first argues on appeal that he was denied his constitutional right to an impartial jury when the trial court allowed Juror 32 to remain on the panel. According to defendant, the juror's answers showed that she was biased and possessed a "state of mind that would interfere with her ability to enter a just verdict." We disagree.

When an issue is unpreserved, this Court reviews the record for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763 (internal citation omitted). Further, "[t]his Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000).

"[A] criminal defendant has a constitutional right to be tried by an impartial jury[.]" *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). "If a party shows that a prospective juror comes within one of the categories enumerated in [MCR 2.511(D)], then the trial court is without discretion to retain that juror, who must be excused for cause. Otherwise, the decision to excuse for cause is within the discretion of the trial court." *People v Walker*, 162 Mich App 60, 64; 412 NW2d 244 (1987) (internal citations omitted). See MCR 6.412(D)(2). Grounds for challenging a juror include but are not limited to when the juror:

(2) is biased for or against a party or attorney;

(3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be; [or]

(4) has opinions or conscientious scruples that would improperly influence the person's verdict . . . . [MCR 2.511(D).]

"Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2000). "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Miller*, 482 Mich at 550.

Strong feelings coupled with an inability to set aside those feelings has been found to provide cause for juror excusal. See *Poet v Traverse City Osteopathic Hosp*, 433 Mich 228, 249-250, 252 n 20; 445 NW2d 115 (1989). In *Walker*, 162 Mich App at 64-65, however, a juror's position as a police officer, without more, was insufficient to create an inference of bias. Similarly, in *People v Lee*, 212 Mich App 228, 251; 537 NW2d 233 (1995), it was not error for the trial court to retain a juror who had closely followed a previous trial in the same matter, which took place years earlier. This Court stated that

Juror F had not formed a definite opinion about defendant's guilt at the time of trial and promised to keep an open mind. Although she previously believed that defendant was guilty at the time of the first trial, she did not recall details of the case. It therefore would not have been difficult for Juror F to set aside her previous opinion. The trial court was also in the best position to judge, on the basis of their credibility and demeanor, whether Juror F and the other members of the venire could render a fair and impartial verdict. Legal cause for Juror F's dismissal was not shown. [*Id*.]

Further, "[j]urors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 622 NW2d 836 (2003). "A juror who expresses an opinion referring to some circumstance of the case which is not positive in character, but swears he can render an impartial verdict, may not be challenged for cause." *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986); see MCL 768.10.

In this case, defendant has not overcome the presumption that Juror 32 executed her duties to be impartial as instructed by the trial court, nor has defendant demonstrated legal error requiring reversal.

The prosecution asked and learned that Juror 32 had never been a victim of crime but that her daughter "was attacked once at college." When asked if that experience would prevent her from sitting on a criminal case involving domestic violence, Juror 32 answered: "I'd like to say it doesn't. It's hard to say for sure."

Defense counsel began voir dire of Juror 32 by asking what types of evidence she felt would be helpful and, specifically, if having fingerprints would help. Juror 32 answered that she did not think so "[b]ecause they could have people in and out of their house that they didn't necessarily do anything." Defense counsel's dialogue with Juror 32 continued as follows:

*Q.* Can you think of a reason why someone who's abused might lie about the attacker?

*A.* Yeah. Out of fear, I guess.

*Q.* Okay. If Mr. Numan chooses not to take the witness stand, will that be difficult for you in rendering your verdict?

*A.* Seems to me like he'd wanna have a say that if he—but I—yeah.

*Q.* Why might an innocent person chose [sic] not to testify?

*A.* I don't know. I guess if I was innocent, I would wanna have my say, so I could let people know I was innocent.

*Q.* Could one reason be that maybe the State is trying to twist their words?

*A.* Yeah.

\* \* \*

*Q.* Is Mr. Numan innocent now or is he guilty because he's charged with a crime?

*A.* I—well, the—we live in a system that says he's innocent. So, yeah.

*Q.* Well, our system says he's innocent. Is he? Or do you think he might be guilty?

*A.* I think it's hard to not think that a little bit if you got this far that they couldn't work it out between the two of 'em.

*Q.* Do you think that if someone's arrested of a crime, they're probably guilty?

*A.* Probably. I (inaudible).

\* \* \*

*Q.* Okay. I guess I'm the sole lefty here. Question I asked a bunch of jurors earlier. You see a car pulled over by the police, you ever think they're—"hey, what they'd [sic] do that makes 'em innocent"? Ever—that ever cross your mind?

*A.* No.

*Q.* What did come to mind when you see someone pulled over?

*A.* Well, typically it's either they need some help because their car's broken down or if they were speeding or doing something they shouldn't have been doing.

Juror 32's answers show that she was willing and able to keep an open mind regarding alternate explanations, particularly when she replied that (1) any fingerprints present could have been from someone who "didn't necessarily do anything," (2) people pulled over in their cars were not necessarily doing something illegal, and (3) a victim could lie about her attacker. Regarding the right to not testify, Juror 32 agreed that, even though a defendant may want to say what happened, a fear that the prosecution may twist his testimony was a legitimate reason for him to choose to not do so. Defendant next challenges Juror 32's answer about defendant's innocence and choosing not to testify. Juror 32 stated, "I think it's hard to not think that a little bit if you got this far that they couldn't work it out between the two of 'em," after she acknowledged that defendants are presumed innocent under our criminal justice system. Finally, despite Juror 32's answer that she was unsure how her daughter's assault would affect her ability to decide a case involving domestic violence, Juror 32, along with the rest of the panel, swore or affirmed to follow the trial court's instructions regarding their duty as jurors. Those standard jury instructions included the presumption of defendant's innocence, defendant's right to not testify, and setting aside any personal biases.

In context, none of Juror 32's answers show she had strong feelings that reflected negatively on her ability to decide this case. To the degree that questions were left unresolved, any error was negated when Juror 32 swore to abide by the jury instructions. Juror 32's presence on the panel could not be successfully challenged for cause.

Therefore, the trial court did not clearly or obviously err when it did not excuse Juror 32 for cause based on alleged partiality.

Alternatively, defendant argues that defense counsel provided ineffective assistance when she did not challenge Juror 32's presence on the panel and that no strategic reason existed to allow the juror to remain seated.

Whether defense counsel provided effective representation is a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The applicable facts must be determined by the trial court, which then must decide whether those facts rise to a level violative of the defendant's right to effective assistance of counsel. *Id*.

The United States Constitution and Michigan Constitution both guarantee to criminal defendants the right to counsel. US Const, Am VI; Const 1963, art 1, § 20. The right to counsel includes the right to effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Among this strong presumption is that counsel's assistance "was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Under *Strickland*, "[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *People v Hoag*, 460 Mich 1, 5; 594 NW2d 57 (1999) (citation omitted). In other words, counsel's performance must meet an "objective standard of reasonableness." *Trakhtenberg*, 493 Mich at 52.

Under the second prong of the test, a defendant must also show "that the deficient performance prejudiced the defense." *Hoag*, 460 Mich at 5 (citation omitted). "In attempting to persuade a reviewing court that counsel was ineffective, a defendant must also . . . establish 'a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.' " *Id*. at 6 (citation omitted). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland*, 466 US at 694.

"[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy . . . ." *Johnson*, 245 Mich App at 259. Further, this Court takes a highly deferential stance when evaluating claims of ineffective assistance of counsel with regard to jury selection:

> Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we cannot see the jurors or listen to their answers to voir dire questions. For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror. [*People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (quotation marks and citations omitted).]

Here, although the parties challenged a total of eight jurors for cause, Juror 32 was not one of them. A number of these jurors were dismissed for a perceived inability to be impartial, which defendant now argues should have been the case with Juror 32 as well. Like the trial court, however, the parties were in a better position to assess the audible and visual aspects of their interactions with Juror 32 at the time of selection. Then, with one peremptory challenge remaining, defense counsel expressed satisfaction with the panel.

As stated earlier, Juror 32's answers did not show feelings so strong that she could not render a verdict on the basis of the case as presented. Further, as stated *supra*, any perceived error was corrected when she swore or affirmed to be impartial and follow the directions as given by the trial court. In short, defense counsel's performance did not fall below an objective standard of reasonableness or professional norms when she did not challenge Juror 32's presence on the panel.

Defendant's argument that defense counsel had no strategic reason to abstain from challenging Juror 32 also fails for a second reason, Juror 32 was almost the last of the empaneled jury.[1] After 18 jurors had been excused for various reasons, defense counsel voiced her concern that the jury pool was running low. Juror 32 was called after two more jurors were excused. Thus, from the record, it appears defense counsel made a judgment call to retain Juror 32 in light of the

---

[1] Jurors in the jury pool were randomly assigned numbers and called to the jury box sequentially by that number. This Court has directed another trial court to cease use of a similar method because, although not fatal to the fairness and impartial nature of a jury, it allowed parties to determine which juror would be called next instead of being as random as possible. *People v Green*, 241 Mich App 40, 47-48; 613 NW2d 744 (2000).

possibility that the dwindling number of remaining jurors would be less desirable to defendant or that the continued exercising of challenges would result in an unwanted delay of proceedings.

Finally, even if defense counsel's decision to retain Juror 32 was deemed deficient, defendant fails to demonstrate by any reasonable probability that the outcome would have been any different with another juror. Given that Juror 32 gave multiple responses to questions during voir dire indicating that she would be an impartial juror, it is wholly speculative to conclude that a different outcome of trial was reasonably probable if she did not serve on the jury. Contrary to defendant's mere conclusory statement otherwise, defense counsel's performance cannot be said to be so deficient that it undermined confidence in the outcome of the case.

## III. PREVIOUS CONVICTIONS

Defendant next argues that the trial court abused its discretion, on relevancy grounds, when it allowed evidence of defendant's prior convictions into evidence. According to defendant, the certificates of conviction were merely representations of the "aftermath of the acts," not the acts themselves. Further, defendant contends, the prejudicial impact of those convictions unfairly outweighed their probative value and thus they should not have been admitted. Similarly, defendant argues, VL's testimony that defendant was charged and convicted in 2019 was also inadmissible. Further, defendant claims, because our Supreme Court since his trial has held in *People v Propp*, 508 Mich 374, 385-386; 976 NW2d 1 (2021), that rules of evidence not specifically mentioned in MCL 768.27b may be considered at trial, the trial court abused its discretion when it followed old precedent. We disagree with these arguments.

A trial court's grant or denial of an evidentiary motion is reviewed for an abuse of discretion. See *People v Daniels*, 311 Mich App 257, 271; 874 NW2d 732 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

MCL 768.27b states, in pertinent part:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

Evidence is relevant if it tends to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. MRE 401; *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). Relevant evidence is admissible unless otherwise stated by the rules of evidence, other rules adopted by our Supreme Court, or the United States or Michigan Constitutions. MRE 402. Further, "[e]vidence which is not relevant is not admissible." *Id*. The proponent of proffered evidence bears the burden of establishing its relevance and admissibility. *Crawford*, 458 Mich at 386 n 6.

MRE 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence." Under MRE 403, "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. Thus, MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citations omitted).

Analyzing whether admission of prior-bad-acts evidence is proper under MRE 403 requires a two-step inquiry:

> First, this Court must decide whether introduction of [defendant]'s prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing [defendant]'s prior bad acts into evidence. [*People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citation omitted).]

This Court also noted that when addressing the first inquiry, whether the evidence is unfairly prejudicial,

> The unfair prejudice language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. Moreover, admission of evidence is unfairly prejudicial when the danger exists that marginally probative evidence will be given undue or preemptive weight by the jury. However, the Michigan Supreme Court also recognizes that the prosecution does not have to use the least prejudicial evidence to make out its case. [*Id*. (quotation marks, citations, and alterations omitted).]

Our Supreme Court, in *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012), also listed nonexclusive factors that may be considered when assessing whether prior-bad-acts evidence is unfairly prejudicial.[2] These include:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*.]

As outlined in *Cameron*, the second inquiry is to weigh the probative value of the evidence against the unfair prejudice. *Cameron*, 291 Mich App at 611. A defendant's propensity to commit a charged offense is highly probative and relevant. *Watkins*, 491 Mich at 470. Further, a person who has compiled a substantial criminal history is more likely to have committed a crime than

---

[2] Although *Watkins* did so while considering a sister statute, MCL 768.27a, the factors would seemingly apply with equal force for the purposes of MCL 768.27b.

someone with no criminal history. *Id*. Therefore, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

A conviction provides reliable evidence that the underlying crime occurred. *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014).[3] Further, a guilty plea is an admission of wrongdoing. See, e.g., *People v New*, 427 Mich 482, 487; 398 NW2d 358 (1986).

In this case, almost all the factors outlined in *Watkins* tend to show that the evidence of the two convictions was not unfairly prejudicial. First, the two convictions were both for the same offense as one charged at trial—domestic violence—and one of those, the 2019 conviction, was perpetrated against the same victim. Second, at the time of trial, those convictions were two and nine years old, respectively, which fell within the 10-year limit imposed by MCL 768.27b. Third, VL also testified that defendant was violent with her on at least one other occasion in 2020, indicating that his actions were becoming more frequent in nature. Fourth, the presence of intervening acts was not explored in this case, so this factor is neutral. Fifth, as stated earlier, the certificates of conviction are considered reliable evidence of the prior offenses. And sixth, defendant noted in closing at trial that the case lacked forensic evidence, essentially rendering the case a matter of VL's credibility. The convictions, coupled with VL's 911 call contemporaneous to the incident, which defendant does not challenge on appeal, were likely helpful to decide whether VL's testimony was credible. Further, as the prosecution notes, the convictions were unlikely to mislead the jury or confuse the issue whether defendant committed the alleged crimes. Overall, the *Watkins* factors illustrate that the evidence of the prior convictions was not unfairly prejudicial to defendant.

Next, the certified convictions of defendant's 2012 and 2019 convictions for domestic violence provided reliable evidence that defendant committed domestic violence at least twice before. Defendant admitted those acts of domestic violence by pleading guilty to those charges. In fact, at the close of this case, defendant argued that his admissions of guilt to the 2012 and 2019 charges—his taking accountability for what he had done—should be viewed as evidence that he was not guilty in the instant case, or, in other words, the very reason he was challenging the charges.

The 2012 and 2019 convictions, particularly when combined with VL's other testimony, tended to show defendant's propensity of acting violently against women, which, as stated in *Watkins*, was highly relevant and probative of whether defendant committed the crime on the occasion in question. The convictions were also relevant as support of VL's credibility. Because the convictions were relevant for multiple purposes, they were admissible under MCL 768.27b.

---

[3] In *Duenaz*, the trial court admitted "[a] certified copy" of the "defendant's 2009 Arizona conviction for attempted molestation of a child" for the purposes of MCL 768.27a, but the jury was not provided with "details of the conviction." *Duenaz*, 306 Mich App at 101. This Court upheld admission of that evidence under the statute notwithstanding that no details of the underlying offense were provided to the jury. *Id*.

In balance, the evidence of the 2012 and 2019 convictions was not unfairly prejudicial considering the highly probative nature of the convictions and, therefore, the trial court acted reasonably when it allowed them to be admitted.

Turning to the trial court's decision itself, it found that the prosecution provided notice in a timely manner and that the prior convictions were within 10 years of the instant offense, as was the more recent violence against the victim. After considering defendant's argument that the jury would be misled to focus on those cases instead of the case at hand, the trial court found that the 2012 and 2019 convictions were relevant and, although prejudicial, "certainly not more prejudicial than probative." In all, the trial court took great care in determining whether the proffered evidence was admissible under MCL 768.27b.[4]

Because the trial court acted in both a reasonable and principled manner, it did not abuse its discretion when it admitted the evidence of defendant's prior convictions.

Defendant's next argument, that the trial court abused its discretion when it failed to consider other rules of evidence, also is without merit.

A trial court does not abuse its discretion when it makes a decision that follows law in effect at the time because doing so is precisely its mandate. See *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds by *Karaczewski v Farbman Stein & Co*, 478 Mich 28; 732 NW2d 56 (2007). Therefore, a trial court cannot be faulted for its failure to perceive future changes in interpretation to laws that may or may not affect its decision. See *id*.

In this case, defendant seeks to fault the trial court for failing to consider MRE 609 "or any other rule of evidence" when deciding whether to allow other-acts evidence under MCL 768.27b. However, defendant's argument ignores the impossibility of knowing that our Supreme Court would later clarify that a trial court *may* consider other rules of evidence or, regarding MRE 609 specifically, that defendant would or would not testify at trial. See *Propp*, 508 Mich at 385-386.[5]

Moreover, the trial court was not asked to consider any specific rules of evidence not already mentioned in MCL 768.27b. The trial court cannot be faulted for this omission:

> Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal

---

[4] Although not challenged by defendant on appeal, the trial court also found that the 2020 incident in which defendant assaulted VL while she was in her bathtub was probative because it involved the same victim and because it happened only two months before the incident in question. Instead of granting a blanket admission regarding that incident, however, the trial court took care in noting that defendant's alleged statement that he was going to kill her spoke too closely to the AWIGBH charge in this case and, therefore, was more prejudicial than probative.

[5] Defendant admits on appeal that at the time of trial, binding precedent provided that MCL 768.27b was only subject to MRE 403, not any other rule of evidence.

arguments to the court for its resolution of their dispute. [*Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008) (internal citation omitted).]

Because neither party requested review of the evidence under MRE 609 and binding precedent provided that MRE 609 was not applicable, the trial court committed no error by not doing so.

Overall, therefore, the trial court did not abuse its discretion when it allowed evidence of defendant's prior convictions of domestic violence to be presented at trial.

## IV.  $200 FINE

Defendant argues that the trial court's imposition of a $200 fine for his conviction of unarmed robbery was improper because fines are not authorized by statute as a penalty for unarmed robbery.  See MCL 750.530.  The prosecution concedes on appeal that the penalty for unarmed robbery does not include authorization of fines and that the $200 fine is otherwise unauthorized by statute.  Consistent with this concession, we direct the trial court on remand to vacate the fine.

## V.  CONCLUSION

We affirm defendant's convictions, vacate the trial court's imposition of the $200 fine for unarmed robbery, and remand the case to the trial court for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford